# Case No. 9,330.

## The MAY.

## The OCONTO.

[6 Biss. 243;[1] 7 Chi. Leg. News, 137.]

Circuit Court, E. D. Wisconsin. Nov., 1874.[2]

PENALTIES—INFORMATION—SEIZURE ESSENTIAL TO JURISDICTION—WHO SHOULD MAKE.

1. In cases of information an actual seizure of the res, prior to the filing of the libel, is essential to the jurisdiction of the federal courts.

[Criticised in The Joshua Leviness, Case No. 7,549. Cited in U. S. v. The Frank Silvia, 45 Fed. 642.]

2. United States Statutes and decisions of the supreme court commented upon.

3. The secretary of the treasury may authorize any United States officer to make the seizure; and in the absence of such authority, it is the duty of the customs officers.

[These were two appeals from decrees of the district court of the United States for the Eastern district of Wisconsin refusing to entertain jurisdiction of libels of information filed by the United States. The opinions of Judge Miller will be found in Cases Nos. 9,329 and 10,421.]

Levi Hubbell, U. S. Dist. Atty.

Wm. P. Lynde, for claimants.

DRUMMOND, Circuit Judge. These are appeals from the district court, and I have, after some hesitation, come to the conclusion that these proceedings were irregular, for the reason that the res was not in either case seized before the libel was filed. The objection taken to the jurisdiction of the court is technical, and my own judgment is opposed to sustaining it; but I think that the decisions of the supreme court have substantially held that there should be in such cases as this, before the libel is filed, a seizure made by the proper officer, and I will state why I have come to the conclusion that these decisions must control in these cases.

The act of 1789 gave exclusive jurisdiction to the district court in all cases of seizure. The language is: "All seizures under laws of imposts, navigation or trade of the United States, where the seizures are made on waters which are navigable * * * within their respective districts as well as upon the high seas." 1 Stat. 77.

It will be observed it refers to all cases of seizure under the laws of navigation or trade, as well as of imposts. The principle is stated, and the authorities cited in section 301 of Benedict's Admiralty, in which it is said that "an open, visible seizure by an officer of the government authorized by law to seize, must precede the commencement of judicial proceedings. The seizures are usually made by the revenue officers, or by the commanders of armed vessels on the high seas." The lead-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirming Cases Nos. 9,329 and 10,421.]

ing case upon the subject is The Ann, 9 Cranch [13 U. S.] 289.

In conformity with this view is the 22nd rule in admiralty adopted by the supreme court of the United States, in which it is said: "All informations and libels of information upon seizure for any breach of the revenue or navigation or other laws of the United States, shall state the place of seizure, whether it be on the land or on the high seas, or on navigable waters within the admiralty or maritime jurisdiction of the United States, and the district within which the property is brought, and where it then is." Ben. Adm. p. 371.

The theory upon which this doctrine is maintained is this, that it is the place of seizure that gives jurisdiction to the court. Where there is a forfeiture or liability to seizure for an offense against the laws of the United States, of course the res can be seized anywhere, as authorized by law, and may be brought within a district, and when it is thus seized, or is brought within a district, then the jurisdiction of the district court of that district is said to attach, and the libel must state that it is seized, and is there, in order that the court may judicially know that it has jurisdiction of the case.

And therefore it is, that this rule requires that the libel should state' the place of seizure. This seems to be the theory upon which these adjudications and this rule are made. On principle I confess I do not see any material distinction between cases of that sort and the ordinary cases of libels in admiralty by individuals, which are called cases of seizure, because the res is seized. But in all such cases the res is taken, not in the first instance, before the libel is filed, but after, and because the libel states a case in admiralty, the monition issues, and upon that monition the seizure takes place.

Now, it is not easy to comprehend why, in the one case as well as in the other, the seizure may not be made by the monition after the libel is filed. If the res is not taken, then the court has no jurisdiction of the case, and the proceedings must be dismissed. The only distinction is, that in the one case it is seized before, and in the other after the libel is filed.

And in either case, nothing could be done against the res by way of forfeiture or enforcement of a penalty or decree, unless there was an actual seizure. In the one instance the seizure is by the ordinary officers of the customs, and in the other, by the marshal of the court.

But, however this may be, whether the distinction is well founded in principle or not, it seems to be the rule adopted by the supreme court of the United States, and whatever view this court may entertain of the decisions, if such is the law as adjudicated by that court, we must follow it. And it must be confessed that this view is strengthened somewhat by the language of the first sec-

tion of the act of congress of February 28, 1871 (16 Stat. 440). That act consolidated all previous acts and amendments upon the subject of the regulation of vessels propelled in whole or in part by steam, from 1838 down to that time.

It is for a penalty for non-compliance with this act that these proceedings are instituted. And the first section of that act says: "And if any such vessel shall be navigated without complying with the terms of this act, the owner or owners shall forfeit and pay to the United States the sum of five hundred dollars for each offense, one-half for the use of the informer; and for which sum the steamboat, or the vessel so engaged, shall be liable, and may be seized and proceeded against by way of libel in any district court of the United States having jurisdiction of the offense."

There is some force in the argument derived from the peculiar collocation of this phraseology, the act of seizing being first mentioned, and then the proceedings by libel in the district court of the United States. Whether that is accidental or otherwise, is not apparent, but such is the language and the order in which it is stated.

It has been contended that this act does not provide for any special officers whose duty it is to make the seizure, and it is said that there is a controversy upon the subject, the marshal declining to make the seizure, and the officers of the customs doubting their authority.

The act of 1799 provided that the officers of the customs should "make seizure of and secure any ship, vessel, goods, wares or merchandise, which shall be liable to seizure by virtue of this or any other act of the United States respecting revenue, which is now or may hereafter be enacted, as well without as within their respective districts." 1 Stat. 678. It is true that this section speaks of revenue alone, but it may be said that all laws connected with navigation are in a sense revenue laws. The terms are used sometimes indiscriminately.

The act of 1871 is a navigation law, and for the protection of lives and property, and is declared to be "for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes." It is clearly, then, a navigation law, and I understand it is so conceded by counsel.

I admit that there is nothing in the act of 1871 which prescribes it as a special duty upon any of the officers of the United States to make the seizures referred to in the first section, and it is only by analogy that we can hold that the officers of the customs are authorized to make the seizure under that act.

But, taking the whole scope of the decisions of the supreme court upon the subject, together with the 22nd rule, and the general tenor and effect of the act of 1871, I have no doubt that it is competent for the secretary of the treasury to authorize any officer of

the United States to make the seizure; and that in the absence of any direction by him, it is the duty of the officers of the customs.

Mr. Lynde.—Has your honor considered the 30th section of the act of 1871, where it is made the duty of the officer of the customs to see that the act is enforced?

The Court.—I have not particularly, and I state this without reference to the 30th section of the act of 1871, which, possibly, may be broad enough to cover the case. The forms in Benedict, to which the district attorney has referred the court, in several instances, seem to indicate that the filing of the libel precedes the seizure, and perhaps it is not an unfair inference from that circumstance that there may have been cases of that kind in the Southern district of New York, under similar laws to that of 1871.

But it does not seem that the question ever came up before the federal courts in the Southern district of New York, and we cannot, therefore, give those forms the effect of an adjudication. In the case of The Fideliter [Case No. 4,755], the appeal in the circuit court was dismissed [and so as to dismiss also the case in the district court] [3] for the reason that there was no allegation in the libel that there had been a seizure, and the circuit court held that that must appear, citing various authorities.

It does not distinctly appear, by the report of the case, what particular law was violated in that instance, but merely that it was a proceeding in admiralty to condemn the steamship Fideliter for violation of the laws of the United States.

Mr. Hubbell.—Condemnation follows fraud, and seizure a violation of the laws of navigation.

The Court.—One may be said to be a case of forfeiture, and the other a case simply of penalty, and to enforce the one or the other, seizure is the remedy, expressly so made by the act of 1871, and this court in the one instance decrees a forfeiture, and in the other that the res shall be sold to enforce the penalty. But I hardly think there is any just distinction growing out of that view of the case. I regret that I am obliged, in obedience to what I consider the decisions of the supreme court, to make the order which I shall have to make in these cases. And I would like, if the district attorney feels so inclined, that the supreme court should have an opportunity of re-considering its decisions upon this point. It may be that they can find a distinction between this case and the others which they have decided. I would hope it may so prove, because I think that there ought not to be so much distinction between the cases of seizure before and after the filing of the libel. But they have taken that distinction. These libels were dismissed in the court below.

[Mr. Lynde: Yes, sir. There was one judg-

3 [From 7 Chi. Leg. News, 138.]

ment upon the merits, and the other dismissed on my application on terms.] [3]

The decrees of the court below may be affirmed, and the libels dismissed by the order of this court for want of jurisdiction.

NOTE. That in cases of information an actual seizure of the res, prior to the filing of the libel, is essential to the jurisdiction of the court, and that such precedent seizure must be alleged in the libel, see The Lewellen [Cases Nos. 8,-307 and 8,308]. But in that case it was also held that the act of the owners in executing delivery bonds under the act of congress, and thus regaining possession of the property, was a waiver of the objection of the want of a prior seizure.

The following are some of the decisions of the supreme court referred to in the above opinion: In order to give jurisdiction in rem, there must have been a valid seizure of the res by the marshal. Taylor v. Carryl, 20 How. [61 U. S.] 584. And the seizure must be actual, and not afterwards abandoned. The Josefa Segunda, 10 Wheat. [23 U. S.] 312. As to what constitutes a seizure, consult, also, Pelham v. Rose, 9 Wall. [76 U. S.] 103.

The district court where the seizure is made has exclusive jurisdiction. The Little Ann [Case No. 8,397]; U. S. v. The Betsey, 4 Cranch [8 U. S.] 452; Keene v. U. S., 5 Cranch [9 U. S.] 310; The Merino, 9 Wheat. [22 U. S.] 402. The law now provides (Rev. St. 1874, § 3072): "It shall be the duty of the several officers of the customs to seize and secure any vessel or merchandise which shall become liable to seizure by virtue of any law respecting the revenue, as well without as within their respective districts."

