UNITED STATES v. GEORGE SPRAUL & CO.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1911.)

No. 2,125.

1. FOOD (§ 24*)—SEARCHES AND SEIZURES—JURISDICTION—PROCEDURE.

Under Rev. St. § 563, subd. 8 (U. S. Comp. St. 1901, p. 457), giving United States District Courts jurisdiction of all civil causes of admiralty and maritime jurisdiction, and of all seizures on land and on water not wthin the admiralty and maritime jurisdiction, the court in cases of seizures on land proceeds, not as a court of admiralty, but as a court of common-law jurisdiction on a trial by jury.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

2. FOOD (§ 24*)—ADULTERATED FOOD—FORFEITURE—JURISDICTION—EXECUTIVE SEIZURE.

Since Pure Food and Drugs Act June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193), providing for proceedings against adulterated and misbranded food transported in interstate commerce for sale or found in the original packages, etc., does not declare the goods ipso facto forfeited by an infraction of the act, nor expressly authorize an executive seizure before proceedings for forfeiture are instituted but on the contrary requires the district attorney on receiving a certificate of the facts from the Secretary of Agriculture to commence proceedings without delay for the enforcement of the penalties of the act and hence prior executive seizure was not required to sustain forfeiture proceedings by the provision that the proceedings shall conform as near as may be to the proceedings in admiralty.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

3. FOOD (§ 24*) — ADULTERATED FOOD—SEIZURE — PROCEEDINGS — ADMIRALTY RULES.

Pure Food and Drugs Act June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193), providing that seizure proceedings shall conform as near as may be to the proceedings in admiralty does not adopt admiralty rule 22, that libels on seizures for breach of the revenue, navigation, or other laws of the United States shall state the place of seizure and the district within which the property is brought and where it then is, rather than rule 23, providing that the libel, if in rem, shall state that the property is within the district.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

In Error to the District Court of the United States for the Southern District of Ohio.

Libel by the United States against 275 cases of tomato catsup, more or less, claimed by George Spraul & Co. From a decree dismissing the libel for want of an allegation of previous seizure, the United States brings error. Reversed.

Sherman T. McPherson, U. S. Atty., and Edward P. Moulinier, Asst. U. S. Atty.

D. F. Cash, for defendant in error.

Before KNAPPEN, Circuit Judge, and COCHRAN and SATER, District Judges.

KNAPPEN, Circuit Judge. The United States filed this libel in the United States District Court for the Southern District of Ohio

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), for the seizure and condemnation of the articles named in the above title.

Section 10 of the act referred to provides:

"That any article of food, drug, or liquor, that is adulterated or misbranded within the meaning of this act, and is being transported from one state, territory, district, or insular possession to another for sale, or, having been transported, remains unloaded, unsold, or in original unbroken packages, or if it be sold or offered for sale in the District of Columbia, or the territories, or insular possessions of the United States, or if it be imported from a foreign country for sale, or if it is intended for export to a foreign country, shall be liable to be proceeded against in any district court of the United States within the district where the same is found, and seized for confiscation by a process of libel for condemnation. * * * The proceedings of such libel cases shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury on any issue of fact joined in any such case, and all such proceedings shall be at the suit of and in the name of the United States."

The section in question contains provisions for the destruction or sale of the articles if condemned as adulterated or misbranded, as well as for the return of the same to the owner thereof upon the payment of the costs of the proceedings and the giving of a bond that the articles shall not be sold or disposed of contrary to the provisions of the act, or the laws of any state, territory, district, or insular possession.

The libel in question, referring to the articles of food as "contained in original unbroken packages," alleges that the said packages were transported in interstate commerce; that the same were illegally held within the jurisdiction of the court; and that the articles of food contained therein are adulterated in violation of the act referred to "and liable to seizure and condemnation as provided therein, for the reason that each and every bottle and jug in said two hundred and seventy-five, more or less, cases, contains an article of food and food product consisting wholly or in part of a filthy, decomposed and putrid vegetable substance and is unfit for food." It prayed "the process of attachment in due form of law, according to the course of this court in cases of admiralty and maritime jurisdiction, so far as is applicable to this case."

An attachment was issued to the marshal, commanding the seizure of the property, and notice to claimants. The marshal returned that he had seized the articles mentioned, and held the same in his custody subject to the further order of the court. The claimants named in the title appeared and demurred, "for the reason that it does not appear from an inspection of said libel that the catsup described therein had, prior to the filing of said libel and the issuance and service of process in this case, been seized in any way by any officer of the United States." The libel contains no allegation of previous seizure. The court made an order sustaining the demurrer and dismissing the libel. The United States excepted to this order, and brings this writ of error to review the same.

The sole question presented here is whether previous executive seizure of the goods is necessary to give the court jurisdiction of the

libel, as was held by the district judge in an able and elaborate opinion.

In the case of The Brig Ann, 9 Cranch, 289, 3 L. Ed. 734, which was a case of an information against certain merchandise alleged to have been imported contrary to the nonimportation act of March 1, 1809, it was held that the court had no jurisdiction over the condemnation proceedings until after executive seizure. The statute which was involved in that case expressly provided for seizure by the collector and declared a forfeiture of the offending articles. Act March 1, 1909, c. 24, 2 Stat. 528. Mr. Justice Story based the necessity of previous executive seizure upon the judiciary act of September 24, 1789 (chapter 20, § 9, 1 Stat. 76), which conferred upon the District Courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made on waters navigable from the sea by vessels of ten or more tons burden, within their respective districts, as well as upon the high seas." The learned justice interpreted this section of the judiciary act as conferring jurisdiction over the condemnation proceedings upon the District Courts only of the district in which the seizure was made, saying that:

"Before judicial cognizance can attach upon a forfeiture in rem, under the statute, there must be a seizure; for until seizure, it is impossible to ascertain what is the competent forum."

In a large number of cases since the decision in the case of The Brig Ann, it has been held that in proceedings in rem for forfeiture and confiscation previous executive seizure is necessary to jurisdiction, although there are cases not in harmony with this view. Among the cases in which such previous executive seizure has been held necessary to jurisdiction are the following: Gelston v. Hoyt, 3 Wheat. 246, 4 L. Ed. 381; The Silver Spring, Fed. Cas. No. 12,858; The Washington, Fed. Cas. No. 17.222; The Fideliter, Fed. Cas. No. 4,755; The Tug May, 6 Biss. 243, Fed. Cas. No. 9.330; The Idaho (D. C.) 29 Fed. 187, 191; The Josefa Segunda, 10 Wheat. 312, 6 L. Ed. 329; Dobbin's Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637; United States v. Larkin (6th Circuit) 153 Fed. 113, 82 C. C. A. 247. The rule has also been extended to proceedings under laws providing for seizure and confiscation of "the property of rebels." Pelham v. Rose, 76 U. S. 103, 19 L. Ed. 602; The Confiscation Cases, 87 U. S. 92, 22 L. Ed. 320; United States v. Winchester, 99 U. S. 372, 25 L. Ed. 479. In all or nearly all of the cases above cited there is found either express statutory authority for the seizure, or express statutory declaration that the property shall be, or becomes, forfeited to the United States by reason of the acts complained of, and in some cases both such statutory authority and statutory declaration are found. The statute involved in the case of The Silver Spring expressly provided for a forfeiture of the boat "if found within the district," although not for an executive seizure. Act July 29, 1813, 3 Stat. 51, § 6. In the statute involved in Gelston v. Hoyt, express provision was made for seizure by the revenue officer whenever it should ap-

pear that a breach of the laws of the United States had been committed whereby the ship or the goods on board might become liable to forfeiture. The act relating to navigation of steam vessels (Rev. Stat. § 4499 [U. S. Comp. St. 1901, p. 3060]), as construed by District Judge Deady in the case of The Idaho, expressly authorizes a seizure by the proper officer of the government in advance of judicial proceeding. The Josefa Segunda involved a statute providing that the property subject to confiscation was liable to be "seized, prosecuted and condemned, in the district where the said ship or vessel may be found or seized." Dobbin's Distillery v. United States arose under an internal revenue act which expressly provided for forfeiture. Act July 20, 1868, 15 Stat. 125, c. 186. The statute involved in United States v. Larkin arose under Revised Statutes, § 3072 (U. S. Comp. St. 1901, p. 2011), which makes it "the duty of the several officers of the customs to seize and secure any vessel or merchandise which shall become liable to seizure by virtue of any law respecting the revenue." In the act for the seizing and confiscating of property of rebels express provision is made for executive seizure. See Pelham v. Rose, The Confiscation Cases, and United States v. Winchester.

The present judiciary act (Rev. Stat. § 563, subdiv. 8 [U. S. Comp. St. 1901, p. 457]) gives the District Courts jurisdiction "of all civil causes of admiralty and maritime jurisdiction * * * and of all seizures on land and on waters not within admiralty and maritime jurisdiction," the subdivision mentioned thus omitting the provision found in the section of the judiciary act of 1789 to which we have referred, as to seizures "within their respective districts," and including cases of "seizures on land and on waters not within admiralty and maritime jurisdiction." In cases of seizures on land, however, the District Court proceeds, not as a court of admiralty, but as a court of common law upon a trial by jury. The Sarah, 8 Wheat. 391, 5 L. Ed. 644; United States v. Winchester, 99 U. S., 25 L. Ed., supra. In Dobbin's Distillery v. United States Mr. Justice Clifford said:

"Judicial proceedings in rem, to enforce a forfeiture, cannot in general be properly instituted until the property inculpated is previously seized by executive authority, as it is the preliminary seizure of the property that brings the same within the reach of such legal process. The Schooner Anne, 9 Cranch, 289 [3 L. Ed. 734]."

In the Dobbin's Case due executive seizure had in fact been made for breach of the internal revenue laws, and the above statement was clearly obiter.

Assuming for the purposes of this opinion that, in navigation, customs, and revenue cases the right of executive seizure for violation of the statute exists, even without express statutory provision therefor, and that in such cases such seizure must precede judicial action for condemnation, the real and decisive question before us is simply what was the intention of Congress in this regard as expressed in the food and drugs act. It is noticeable that the act nowhere declares the goods ipso facto forfeited by an infraction of the act. On the contrary, express provision is made for the redelivery of the goods to the owner, by order of the court, upon the payment of the cost and the giv'ng of bond, even in cases where they are found to offend against the act.

The act provides that the Secretary of the Treasury, the Secretary of Agriculture, and the Secretary of Commerce and Labor "shall make uniform rules and regulations for carrying out the provisions of this act, including the collection and examination of specimens of foods and drugs manufactured or offered for sale  *   *   *  or which may be submitted for examination by the chief health, food or drug officers of any state, territory, or the District of Columbia  *   *   * ";  that the examination of such specimens shall be made in, or under the direction and supervision of, the Bureau of Chemistry of the Department of Agriculture for the purpose of determining whether such articles are adulterated or misbranded, and, in case such adulteration or misbranding appears, for the giving of notice by the Secretary of Agriculture "to the party from whom such sample was obtained," with opportunity to be heard.   The act nowhere provides for executive seizure of property offending against the act.   On the contrary, the only duty enjoined upon the Secretary of Agriculture (and upon him only) in case it shall appear to him that any of the provisions of the act have been violated is to "at once certify the facts to the proper United States District Attorney" (section 4).   Not only is the District Attorney given no power of seizure, but section 5 of the act expressly makes it his duty, on receiving from the Secretary of Agriculture (or certain other officers) report of a violation of the act, "to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States, without delay, for the enforcement of the penalties as in such case herein provided," thus suggesting by implication the exclusion of right of executive seizure.   Nor has the marshal implied power to make executive seizures under the act.   He is not by statute charged with the enforcement of the act, as are revenue and customs officers with respect to laws relating to those subjects.

We are not concerned with the question whether the proceedings and notice provided by sections 3, 4, and 5 of the act are necessary prerequisites to action by the district attorney, nor whether they apply to a proceeding under section 10 of the act.   See United States v. 50 Barrels of Whisky (D. C.) 165 Fed. 966; United States v. 65 Casks Liquid Extracts (D. C.) 170 Fed. 449.   We call attention to these provisions because they are the only ones expressly relating to proceedings for the enforcement of the penalties provided by the act, as distinguished from criminal prosecutions.   The considerations to which we have adverted seem to us to repel, rather than sustain, an inference that an executive seizure is necessary, or even contemplated, previous to judicial proceedings in condemnation.   In the case of a law of this character, while it would not be unnatural to provide for an executive seizure, and while such power of seizure would seem of advantage in the enforcement of the act, on the other hand, if authority to make such seizure was intended, it would be the natural course to expressly so declare.   There is no express declaration to that effect and none by implication, unless contained in the clause of section 10, providing that the offending articles "shall be liable to be proceeded against in any District Court of the United States within the district where the same is found, and seized for confiscation by a process of

libel for condemnation," or in the provision that "the proceedings of such libel cases shall conform, as near as may be, to the. proceedings in admiralty.  *  *  *"  It is clear that, as the former clause is punctuated, there is no necessary implication of previous executive seizure.  According to the punctuation, the seizure for confiscation would seem to be "by a process of libel"; and, although such punctuation is by no means conclusive, and should not be controlling as against the intent of the act as otherwise shown, it is entitled to consideration.

It is urged that the clause "the proceedings of such libel cases shall conform, as near as may be, to the proceedings in admiralty," refers to the practice under admiralty rule 22, which provides that:

"The information and libels of information upon seizures for any breach of the revenue, or navigation, or other laws of the United States, shall state the place of seizure  *  *  *  and the district within which the property is brought and where it then is."

But, while this rule recognizes the practice of informations and libels upon seizures, it is not declaratory of the necessity of such previous executive seizure.  There is in our opinion nothing in the reference to "proceedings in admiralty" contained in. section 10 of the food and drugs act which adopts rule 22 rather than rule 23, which latter rule applies to "all libels in instance cases, civil or maritime." and which provides that the libel shall state "if the libel be in rem, that the property is within the district."  Under rule 23 jurisdiction is obtained by the presence of the property within the district (Henry on Admiralty, §§ 127, 132; The Rio Grande, 23 Wall. 458, 23 L. Ed. 158), and the court acquires its jurisdiction over the libel by its filing, and over the res by seizure of the same under a process issued after the libel is filed (The Queen of the Pacific [D. C.] 61 Fed. 213; Pacific Coast S. S. Co. v. Bancroft-Whitney Co. [9th Circuit] 94 Fed. 180, 36 C. C. A. 135).

The proceeding before us was not in admiralty.  The food and drugs act merely provides for conformity of all proceedings for confiscation thereunder "as near as may be, to the proceedings in admiralty."  Previous executive seizure is no part of admiralty proceedings. The language in question, to our minds, falls far short of declaring by necessary implication that a condition precedent to jurisdiction in case of forfeitures under the laws relating to impost, navigation or trade, viz., an executive seizure, is necessary to jurisdiction over judicial proceedings in confiscation under the food and drugs act.  Nor is there anything in the language of the present judiciary act which limits jurisdiction over condemnation proceedings in rem to the district where the property has been previously seized.

Taking into account the nature of the act and the various considerations to which we have referred, as well as the embarrassment which might well result from an executive seizure whose validity must depend not only upon the determination by the court of the question of fact of misbranding or adulteration, but also upon the existence of the other facts necessary to bring the articles under the federal statutes, we are of opinion that the act should not be construed as making a previous executive seizure necessary to the jurisdiction of the court

over proceedings for confiscation. We are the better content with this conclusion from the fact that it has been the general, if not the universal, practice, under the act, for seizures to be made on warrant issued after the filing of the libel.

In our opinion the order sustaining the demurrer should be reversed.