## THE MOTOR VESSEL K. 22845.

### No. 131.

Circuit Court of Appeals, Second Circuit.
Jan. 11, 1932.

Frederick Pepper, for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Alfred C. McKenzie, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the United States.

Joseph H. Wackerman, of Brooklyn, N. Y. (Murty J. O'Connor, of Brooklyn, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

On August 14, 1930, a Coast Guard vessel overhauled and seized the motor boat, K. 22845, in territorial waters of the United States, and arrested her owner and another, then aboard, on the ground that she was transporting liquors unlawfully. They brought her and her cargo to shore, but it does not appear whether they kept possession of the vessel, turned her over to the local collector of customs, or abandoned her altogether. On August 22, 1930, the libelant filed the libel in suit for a maritime lien for repairs, and the marshal arrested the boat. The suit proceeded to decree and sale which resulted in a surplus, to forfeit which the United States intervened on October 28, 1930, by petition in the nature of a libel of information, alleging that the boat had been seized while violating section 26 of title 2 of the Volstead Act (27 USCA § 40). (The petition included various other causes of forfeiture, but in view of Richbourg Motor Co. v. U. S., 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081, these have now been abandoned.) Pending the proceedings the men arrested pleaded guilty and were sentenced for violation of sections 3 and 26 of title 2 of the Volstead Act (27 USCA §§ 12, 40).

It does not appear from the record who had custody of the boat at the time of her arrest under the libel. All we are told is that the marshal "attached" her. If this is to be taken literally, it means that he took possession of her and perhaps we should assume that he took her from the Coast Guard officials or the collector of customs, but whether unlawfully, or by a voluntary surrender, we cannot know. Were the dispute between two claimants, contesting title under two bills of sale, one under the sale on the libel for repairs, the other under condemnation on a libel of information, a case would be presented like The Motor Boat No. L-7869, 21 F.(2d) 594 (C. C. A. 3). We should have to determine whether the possession of the marshal must be presumed to have resulted from a voluntary surrender by the Coast Guard or the collector; and if not, whether a libel of information could be maintained against a res of which the original captor had been unlawfully dispossessed. The Rio Grande, 23 Wall. 458, 23 L. Ed. 158, does not answer that question, because the court had constructive possession when the libel was filed. In general such possession at least of the forfeited property is a condition precedent to a libel of information. The Ann, 9 Cranch, 289, 3 L. Ed. 734; The Josefa Segunda, 10 Wheat. 312, 6 L. Ed. 329; Dobbins's Distillery v. U. S., 96 U. S. 395, 24 L. Ed. 637; United States v. Larkin, 153 F. 113 (C. C. A. 6); United States v. George Spraul & Co., 185 F. 405 (C. C. A. 6). If voluntarily surrendered, no libel will lie; if the captor has been wrongfully dispossessed, it is at least open to question whether he must not regain custody in order to proceed at all.

We have not that situation before us, because the government did not attempt to proceed against the vessel, and does not challenge the jurisdiction of the court to sell it under the libel in suit. Its position is that it may

proceed to forfeit the surplus by petition—equivalent to a libel of information—treating it as a substitute for the vessel and as in the custody of the court. It argues that since section twenty-six declares the property forfeit upon seizure in flagrante delicto, and since upon condemnation the title relates back to the act of forfeiture (United States v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch, 398, 3 L. Ed. 602; United States v. Stowell, 133 U. S. 1, 16, 10 S. Ct. 244, 33 L. Ed. 555), it may proceed against the avails of the sale, and complete its title to them, standing in the place of the res. But it has never been held, so far as we can find, that the title is perfected otherwise than by a valid decree of forfeiture; the only questions that have arisen are as to interests intervening between the act of forfeiture and the seizure. Confessedly the title is imperfect except there be a valid decree, and it follows that what invalidates the decree invalidates the title.

Hence the relevant question is whether under section twenty-six a libel of information will lie against anything but the vessel or other vehicle itself. It seems to us that it cannot, and that if the United States means to proceed at all, it must proceed against the vessel. The point seems to be of first impression, but we think that the conclusion necessarily follows from the language of the section, which contains no suggestion that anything shall be forfeited but the offending vehicle. The notion that the proceeds from the sale of property may be treated as though they were the property itself comes from equity, and is relatively modern in origin. It has no place in a court of law, except in those instances where the law has deliberately adopted equitable principles, of which this is not one. In forfeiture the res by an archaism is conceived of as itself the offender and subject to prosecution as such; the extreme application of this is in those statutes, some of which still exist, which condemn it regardless of the owner's innocence. To substitute the proceeds, though perhaps in accord with a more rational policy, could only be at the expense of a long history, whose origins are still implicit. If we are to draw upon ideas originating independently and fuse them with another heritage, it can only be upon some definite expression of such a purpose, which is here entirely absent. If the prosecution would succeed, it must pursue the guilty vessel.

Moreover, even if we should ignore the transmutation, there would be difficulties. The proceeds were not held in the constructive possession of the court for condemnation, but to the credit of this suit. The vessel had been seized upon this libel; we should be obliged to assume that it had been held under the original seizure until its arrest and not voluntarily then surrendered. We know neither of those things, nor can we presume them, for there is no such evidence as persuaded the court in The Motor Boat No. L-7869 (C. C. A.) 21 F.(2d) 594, supra. Certainly we have a priori as little reason to assume that the marshal wrongfully dispossessed the collector, as that the collector surrendered possession to the marshal. The prosecution has its case to prove, one part of which is a proper basis of jurisdiction. De facto this is absent; if it would supply its place it cannot resort to presumptions raised without antecedent probability. Moreover, even if we were to go so far, we should still be faced with the question that we reserved at the outset; that is, whether even a wrongful dispossession will serve as basis for such a libel ab initio. That we need not determine.

Decree affirmed.