**CHEMICAL BANK NEW YORK TRUST COMPANY, Trustee, Mortgagee**

**v.**

**STEAMSHIP WESTHAMPTON.**

Application of the **UNITED STATES** to Intervene and to Assert a Claim of Forfeiture against the Proceeds of Sale.

**Adm. No. 4451.**

United States District Court
D. Maryland.
May 10, 1967.

Anthony W. Gross, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., and Thomas J. Ken-ney, U. S. Atty., Baltimore, Md., for the United States.

Sol C. Berenholtz, Baltimore, Md. (Solomon Kaplan, advocate), Baltimore, Md., for Trustees of Seafarers Vacation Plan.

Semmes, Bowen & Semmes, Baltimore, Md. (David R. Owen and William R. Dorsey, III, Baltimore, Md., advocates), for Caltex (Overseas) Limited, and others.

John H. Skeen, Jr., Baltimore, Md., for Marine Midland Grace Trust Company, and others.

Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City (Isaac N. P. Stokes, New York City, advocate), and Niles, Barton, Gans & Markell, Baltimore, Md. (Robert H. Williams, Jr., advocate), Baltimore, Md., for Theodore W. Kheel and Raymond J. Scully, Trustees of Seatrade Corp.

Pierson & Pierson, Robert F. Fischer, Thomas B. Eastman, Helen A. Sliwka, Raymond M. Faby, Walter R. Tabler, and William A. Skeen, Baltimore, Md., for various claimants.

William A. Grimes and Ober, Williams & Grimes, Baltimore, Md., for Chemical Bank New York Trust Co., Trustee.

THOMSEN, Chief Judge.

This case is now before the Court on a motion filed by the United States on November 28, 1966, for leave to intervene under Rule 24, F.R.Civ.P., and to file a complaint of information for forfeiture against the proceeds of the sale of the S.S. Westhampton, now in the Registry of this Court. The motion and claim of the United States are opposed by persons holding or claiming liens against the proceeds and by the trustees in bankruptcy of Seatrade Corporation, the owner of the vessel at the time the original libel in rem herein was filed.[1]

That libel against the S.S. Westhampton, her engines, boilers, etc., was filed

[1.] The bankruptcy proceeding, in the Southern District of New York, In re Seatrade Corp., 255 F.Supp. 696, includes Seatrade and seven related corporations, which are being liquidated after a Chapter X reorganization failed. See Chemical Bank New York Trust Co. v. Kheel, 2 Cir., 369 F.2d 845 (1966).

on January 14, 1963, by Chemical Bank New York Trust Company, Trustee (Chemical), to foreclose what purported to be a first preferred mortgage on the vessel. The vessel was sold on March 28, 1963, the sale was confirmed, and the Marshal paid the net proceeds of sale into the Registry. Pursuant to orders permitting interested parties other than the owner to contest the validity of the mortgage, several intervening libelants challenged its validity as a preferred mortgage under 46 U.S.C.A. § 922.[2]

Seatrade had contracted with a German shipyard (Stuelcken) to convert the Westhampton from an aged tanker into a modern cargo vessel. Seatrade sought to borrow 70% of the conversion cost (approximately $960,000) from Hamburgische Landesbank Girozentrale (Landesbank), a German bank. Landesbank sought to secure the loan by a preferred first mortgage on the Westhampton, but since it is an alien it could not qualify as a mortgagee under section 922. See also sections 808, 835, 911 et seq. In an effort to avoid that restriction, Chemical, an American bank, acted as mortgagee and trustee under a trust indenture, and a single bond in the full amount of the indenture was executed and delivered to Landesbank. When Seatrade defaulted in the payments due, Chemical was instructed by Landesbank to file a libel for foreclosure.

This Court held that the mortgage from Seatrade to Chemical was not a preferred mortgage under section 922, entitled to the preferred status given by section 953. 231 F.Supp. 284 (June 11, 1964).

That result was affirmed by the Fourth Circuit, which held that the bond issued to Landesbank was an "interest" in the S.S. Westhampton, and that the transfer of the bond to an alien, illegal because made without Maritime Administration approval, infected the mortgage under which it was issued and rendered that mortgage invalid. 358 F.2d 574 (April 5, 1965, rehearing en banc denied May 3, 1966).

The government now claims that the issuance of the bond to Landesbank under the trust indenture resulted in a forfeiture of the S.S. Westhampton to the United States under sections 808 and 835,[3] and that, since the vessel has been sold, it is entitled to come in at this late date and claim the proceeds of sale.

The government concedes that its claim to the proceeds is subject to certain maritime liens, but contends that its claim is superior to that of the second mortgagee (Marine Midland), other persons claiming liens against the fund, and the trustees in bankruptcy of Seatrade.

Those opposing the government's motion to intervene and its claim of for-

---

2. All citations herein will be to various sections of Title 46 U.S.C.A. unless otherwise indicated.

3. Those sections provide in pertinent part:
   "§ 808. *Registration, enrollment, and licensing of vessels purchased, chartered, or leased; regulations; coastwise trade*

   \* \* \* \* \*

   "Any such vessel, or any interest therein, chartered, sold, transferred, or mortgaged to a person not a citizen of the United States or placed under a foreign registry or flag, or operated, in violation of any provision of this section shall be forfeited to the United States, and whoever violates any provision of this section shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both."

"§ 835. *Restrictions on transfer of shipping facilities during war or national emergency.*

   \* \* \* \* \*

   "Any vessel, shipyard, dry dock, shipbuilding or ship-repairing plant or facilities, or interest therein, sold, mortgaged, leased, chartered, delivered, transferred, or documented, or agreed to be sold, mortgaged, leased, chartered, delivered, transferred, or documented, in violation of any of the provisions of this section, and any stocks, bonds, or other securities sold or transferred, or agreed to be sold or transferred, in violation of any of such provisions, or any vessel departing in violation of the provisions of subdivision (e) of this section, shall be forfeited to the United States.

   \* \* \* \* \* "

feiture of the proceeds rely on the following grounds: laches; that the motion is not timely, as that term is used in Rule 24; estoppel; that only a vessel may be forfeited under the statute and not the proceeds of a judicial sale; that the claimed forfeiture is precluded by § 57j of the Bankruptcy Act, 11 U.S.C.A. § 93(j); and that the claimed forfeiture is barred by the November 1965 amendments to the Shipping Act, 79 Stat. 1305, 1306, 46 U.S.C.A. §§ 808, 835.

### Laches and Timeliness

▇ Laches is generally not available as a bar against the government. United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199 (1824); United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); United States v. 93 Court Corporation, 2 Cir., 350 F.2d 386 (1955).[4] Cf. Cooke v. United States, 91 U.S. 389, 398, 23 L.Ed. 237 (1875); Chesapeake and Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919).

▇ On the other hand, the requirement of timeliness under Rule 24, F.R.Civ.P., does not except the United States from its terms,[5] and in a proper case should be enforced against the government.[6] The determination of timeliness is addressed to the sound discretion of the Court,[7] makes lapse of time a relevant, though not necessarily controlling factor,[8] and requires the Court to consider all the circumstances of the case.[9]

▇ The government's only argument in support of the timeliness of its application is that until the denial of certiorari by the Supreme Court on October

---

4. The rule does not apply "when the United States is merely a formal party to a suit, and the remedy sought in its name is the enforcement of a right for the benefit of a private party * * *." The Falcon, D.Md., 19 F.2d 1009, 1010 (1927). An article in the Baltimore Sun, dated December 3, 1966, indicated that the government's motive in filing a claim for forfeiture was to reimburse Landesbank, pursuant to special legislation to be obtained from Congress. A letter from the General Counsel, United States Maritime Administration to the Department of Justice disclaims any such motive or intent. The Court concludes that the proposed intervention and forfeiture proceedings are initiated by the government in its sovereign capacity, not on behalf of a private party.

5. Rule 24, F.R.Civ.P., provides in pertinent part:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof. As amended Dec. 27, 1946, effective March 19, 1948.

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." As amended Dec. 27, 1946, effective March 19, 1948.

6. See In re Rumsey Mfg. Corp., W.D. N. Y., 9 F.R.D. 93, affirmed in part and reversed in part on other grounds, McAvoy v. United States, 2 Cir., 178 F.2d 353 (1949).

7. 4 Moore's Federal Practice, ¶ 24.13, at 99, and cases cited in footnote 9 thereto.

8. 4 Moore, supra, at 98–99.

9. See e.g. Clark v. Sandusky, 7 Cir., 205 F.2d 915 (1953). For a detailed historical analysis of intervention, see Moore and Levi, Federal Intervention, I. The Right to Intervene and Reorganization, 45 Yale L.J. 565, 568–577 (1936).

24, 1966, the legal effects of Chemical's mortgage were the subject of judicial review, and the applicant could not determine whether a valid claim for forfeiture existed in favor of the United States.

Although at first blush this argument has some appeal, the history of the case, set out in note 10 below, shows that it is not supported by the facts and that to allow the government to intervene and assert the claimed forfeiture at this time would be most unfair to the innocent parties—the second mortgagee, certain parties claiming liens against the proceeds, and the trustees in bankruptcy of Seatrade—who invested time, effort and money in the successful attack on the validity of the Chemical mortgage, against the opposition of the Maritime Administration, which argued that the mortgage was valid, while the Department of Justice stood by, refusing to take any position during the entire period of more than three years.[10]

The application to intervene was filed on November 28, 1966. Under any reasonable standard of timeliness it comes too late.[11]

10. Chemical's libel was filed on January 14, 1963. The vessel was sold on March 28, 1963. On June 12, 1963, upon petition of libelant, the Court ordered all persons having or claiming any interest in the proceeds of sale to file their claims on or before August 1, 1963.

Certain persons claiming liens and the trustees in the Seatrade bankruptcy proceedings challenged the validity of the Chemical mortgage.

This Court filed its initial opinion denying preferred status to the mortgage in January 1964, after months of briefs, arguments and hearings, during which no attempt was made by the government to intervene. In February 1964 the Court withdrew its original opinion and allowed Chemical to reopen its case to present additional evidence. At that time the Court asked the United States, through the Department of Justice, for a statement of its position regarding the status of the first mortgage. On February 7, 1964, a further hearing was held. A representative of Justice was present but elected not to take a position with respect to the status of the mortgage. Representatives from the Bureau of Customs and the Maritime Association were also present and made oral statements to the Court, supporting the validity of the mortgage. Justice was fully informed of Maritime's position and was furnished with data regarding Maritime's prior opinions.

At a further hearing in March 1964, documents from the files of Customs and the files of Maritime were introduced into evidence, and representatives of those agencies testified. The representative of Justice advised the Court that the government desired leave to participate as amicus curiae and to file a brief. Leave was granted, and in April 1964 the government filed a memorandum in which Justice stated that it took no position as to the correctness of the Court's withdrawn opinion. The views of Maritime, as distinguished from the views of Justice, were presented separately in this memorandum. Maritime took the position that the alleged first mortgage was a valid preferred mortgage. On June 11, 1964, this Court filed a revised opinion, again holding that the mortgage was not a valid preferred mortgage. 231 F.Supp. 284.

At the hearing of the appeal by the Fourth Circuit, that Court invited counsel from the Department of Justice who was present at the argument to express the government's views on the status of the mortgage. Counsel advised the Court that the government would not take a position on the merits of the case. Nor did the government file any brief in support of or in opposition to the Petition for Rehearing before the Court of Appeals or when certiorari to the Supreme Court was sought by libelant, although Justice was strongly urged to do so by Maritime. See Hearing before House Subcommittee on Merchant Marine of the Committee on Merchant Marine and Fisheries on S. 2118, 89th Cong., 1st Sess., pages 40–41, U.S.Code Congressional and Administrative News, p. 4231.

During the hearings before the House and Senate subcommittees on the legislation that was enacted as a result of the decision of the Fourth Circuit herein, representatives of Maritime testified and presented their opinions, but Justice, although invited, elected not to participate or to express any opinion before Congress. See Hearing before Senate Subcommittee on Merchant Marine and Fisheries of the Committee on Commerce on S. 2118, 89th Cong., 1st Sess., page 61.

11. Since the government has applied to intervene under both Rule 24(a) and (b), it must be noted that the test for timeli-

### Right to Forfeiture of Proceeds of Sale

The complaint attached to the government's motion cites the forfeiture provisions of sections 808 and 835, see note 3 above. Each of these statutes provides that a "vessel" which is the subject of an unauthorized transfer prohibited by the statute "shall be forfeited to the United States". Neither statute makes any reference to forfeiture of the proceeds after the vessel has been sold.

In The Motor Vessel K.22845, 2 Cir., 55 F.2d 671 (1932), the Coast Guard seized a rum-running vessel in territorial waters of the United States and brought her into port, where it permitted her to be libeled and sold in a suit in admiralty to enforce a maritime lien for repairs. The United States then intervened and sought forfeiture of the remnants and surplus. The Second Circuit, in an opinion by Judge Learned Hand, held that the government's petition was properly dismissed. The Court said:

" * * * the government did not attempt to proceed against the vessel, and does not challenge the jurisdiction of the court to sell it under the libel in suit. Its position is that it may proceed to forfeit the surplus by petition—equivalent to a libel of information—treating it as a substitute for the vessel and as in the custody of the court. It argues that since section twenty-six declares the property forfeit upon seizure in *flagrante delicto*, and since upon condemnation the title relates back to the act of forfeiture (United States v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch, 398, 3 L.Ed. 602; United States v. Stowell, 133 U.S. 1, 16, 10 S.Ct. 244, 33 L.Ed. 555), it may proceed against the avails of the sale, and complete its title to them, standing in the place of the res. But it has never been held, so far as we can find, that the title is perfected otherwise than by a valid decree of forfeiture; the only questions that have arisen are as to interests intervening between the act of forfeiture and the seizure. Confessedly the title is imperfect except there be a valid decree, and it follows that what invalidates the decree invalidates the title.

"Hence the relevant question is whether under section twenty-six a libel of information will lie against anything but the vessel or other vehicle itself. It seems to us that it cannot, and that if the United States means to proceed at all, it must proceed against the vessel. The point seems to be of first impression, but we think that the conclusion necessarily follows from the language of the section, which contains no suggestion that anything shall be forfeited but the offending vehicle. The notion that the proceeds from the sale of property may be treated as though they were the property itself comes from equity, and is relatively modern in origin. It has no place in a court of law, except in those instances where the law has deliberately adopted equitable principles, of which this is not one. In forfeiture the res by an archaism is conceived of as itself the offender and subject to prosecution as such; the extreme application of this is in those statutes, some of which still exist, which condemn it regardless of the owner's innocence. To substitute the proceeds, though perhaps in accord with a more rational policy, could only be at the expense of a long history, whose origins are still implicit. If we are to

ness is not necessarily the same in both instances. "Rule 24(a) does not * * * give an absolute right to intervene unless the application is timely, but since something more than trial convenience is here involved an application to intervene under Rule 24(a) may well be granted at a time in the suit when it would be wise to deny permissive intervention." 4

Moore's Federal Practice, ¶ 24.13 at 98, citing Cameron v. President and Fellows of Harvard College, 1 Cir., 157 F.2d 993 (1946); Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, N.D.Ala., 5 F.R.D. 174 (1946). The arguments against timeliness in this case apply equally to 24(a) and 24(b).

draw upon ideas originating independently and fuse them with another heritage, it can only be upon some definite expression of such a purpose, which is here entirely absent. If the prosecution would succeed it must pursue the guilty vessel." 55 F.2d at 671, 672.

■■ In the instant case, an examination of the statutory purpose supports the conclusion that forfeiture of the proceeds of sale was not intended. The forfeiture provisions, incorporated into the Shipping Act of 1916 by amendments passed in 1918, were designed to protect merchant vessels of the United States from falling into the hands or under the control of aliens who might prevent their use by or for the United States in time of war or national emergency. The purpose of the statute is more apparent if viewed in the perspective of the early days of the First World War, when the United States had inaugurated an enormous shipbuilding effort to overcome the losses incurred by German submarines, and when ships in the world markets were scarce and exceedingly valuable. See discussion in the Fourth Circuit opinion herein, 358 F.2d at 579–580. Forfeiting vessels or interests in vessels which have been illegally transferred serves to promote the statutory purpose by keeping the vessels available for use by or for the United States in times of war or national emergency. Forfeiting the proceeds of sale, four years after the sale of the vessel to an American citizen, does not further that policy.

*Section 57j of the Bankruptcy Act*

Section 57j of the Bankruptcy Act, 11 U.S.C.A. § 93j, provides as follows:

"Debts owing to the United States or to any State or any subdivision

thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law."

■ The Supreme Court has held that the language of this provision "is broad enough to bar all penalties, whether secured by lien or not, and we think the section was designed to do precisely that". Simonson v. Granquist, 369 U.S. 38, 40, 82 S.Ct. 537, 538, 7 L.Ed.2d 557 (1962). While that case concerned tax penalties, the statute refers to a "penalty or forfeiture", and it is clear that the Court's reasoning is equally applicable to both.

■ Section 57j is not confined to bankruptcy proceedings, but applies also to penalties or forfeitures asserted against the interest of a bankruptcy trustee in other proceedings. See Goggin v. United States, Ct.Cl., 140 F.Supp. 577 (1956).[12]

■ This Court concludes that under section 57j the interest of the trustees in the proceeds of sale of the vessel are immune from forfeiture.

For each of the foregoing reasons the application of the United States to intervene and to assert its claim for forfeiture of all or part of the proceeds of sale must be denied.

This decision makes it unnecessary to pass on the other points raised by one or more of the parties objecting to the application.

Counsel should agree upon a proper order.

---

12. In *Goggin*, the trustee in bankruptcy was suing the United States on a contract termination claim, and the United States counterclaimed for fraud penalties. The Court held that the penalties were barred by section 57j. On petition of the trustee for rehearing on another part of the decision, the Court reached a conclusion in favor of the trustee on the ground urged on rehearing, which rendered the decision on section 57j moot. 152 F.Supp. 78 (D.C.1956). Although the original opinion was vacated for this reason, nothing in the opinion on rehearing casts any doubt on the original decision as to the applicability of section 57j in a proper case.