UNITED STATES of America,
Plaintiff-Appellant-Cross
Appellee,

v.

22,680 ACRES OF LAND IN KLEBERG
COUNTY, TEXAS: Virginia Jones
Mullin, et al., Defendants,

v.

Nicolas BALLI et al., Intervenors-Appel-
lees-Cross Appellants.

No. 28555.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1971.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., William L. Bowers, Jr., Sp. Asst. U. S. Atty., James R. Gough, Frank C. Cooksey, Asst. U. S. Attys., Houston, Tex., Shiro Kashiwa, Asst. Atty. Gen., S. Billingsley Hill, William M. Cohen, Robert S. Lynch, Attys., U. S. Dept. of Justice, Washington, D. C., for appellant.

C. Pearce Schaudies, Harlingen, Tex., John C. North, Jr., Corpus Christi, Tex., for Balli.

F. Russell Kendall, William H. White, Jarrel D. McDaniel, Houston, Tex., for other interested parties.

Before COLEMAN, INGRAHAM and WILKEY,* Circuit Judges.

PER CURIAM:

This is an appeal by the United States and Nicolas Balli, et al (purported heirs of Nicholas Balli, claimed original grantee), from two final judgments and order to pay the deficiencies thereon.

The United States instituted this condemnation action on behalf of the De-

* Of the District of Columbia Circuit, sitting by designation.

partment of the Interior to acquire land for the Padre Island National Seashore Park, as authorized by Act of September 28, 1962, 76 Stat. 650. The original complaint and declaration of taking were filed June 16, 1965, and an amended complaint and second declaration of taking were filed December 22, 1965. Those named as defendants and ostensible owners were Virginia Jones Mullin, et al, Nicolas Balli, et al, were not named. The "ostensible owners" were those named in a certificate of title issued to the United States by a title guaranty company.

■ Two jury trials were held resulting in judgments totaling approximately $9,127,500.00. The first jury trial began September 12, 1966, and ended October 13, 1966. The second jury trial began May 9, 1967, and ended June 6, 1967. The respective judgments were entered November 14, 1966, and January 2, 1968.[1]

Not until October 4, 1968, did Nicolas Balli, et al, file any pleading in the case. The United States moved for an adjudication of the claims of Balli, et al. Hearings were commenced before the court on March 6, 1969, which concluded with the final memorandum and order to pay deficiencies on April 11, 1969. The district court held that the claim of Balli, et al, came too late, after the case had been tried and judgments entered. The hearings developed that the United States had notice of a claim by Balli, et

al, before the filing of its original complaint and declaration of taking, and that Balli, et al, and their attorneys, with full knowledge of the proceedings, stood silently by until the trials had been completed, then filed a claim as "unknown owners" asking that they participate in the verdicts.

There is evidence in the record that Balli employed an attorney to prosecute his claim as early as March, 1964, and that the claim of Balli was made known to the United States as early as September, 1964. But the United States disregarded the Balli claim and proceeded against the ostensible owners, Mullin, et al.[2]

Timeliness is an important factor. This court in McKenna v. Pan American Petroleum Corporation, 303 F.2d 778 (5th Cir. 1962), denied an application to intervene for appellate purposes where the applicant knew of the case and simply waited too long before attempting to participate in the litigation. Quoting McKenna:

"He was not a party to the action in the district court and, although he was fully aware that the cause was pending and of his interest, he made no effort to intervene. A court of appeals may, but only in an exceptional case for imperative reasons, permit intervention where none was sought in the district court—Morin v. City of Stuart, 5th Cir. 1939, 112 F.2d 585. No sufficient reason is shown for al-

1. These judgments not only established the value of the lands taken and vested title thereto in the United States, but also adjudged appellees Virginia Jones Mullin, et al., as owners of the lands, ratified prior payments to appellees of deposits in excess of $2.4 million, adjudged and apportioned deficiencies remaining to be paid to various named appellees, and denied relief to all other parties to the suits. The Government's appeal from the first judgment was dismissed pursuant to stipulation on December 27, 1967, and, by agreement, the parties waived all right of appeal from the second judgment. The judgments were thus indeed "final" in every sense before Balli, et al., made any attempt to

enter the suit. See Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

2. Although the United States in its original condemnation petition referred to certain "unknown owners," this reference was dropped in the subsequent amended petitions. No citation to "unknown owners" was published by the United States throughout the proceedings until well after the entry of the final judgments, when Balli, et al., filed their first pleading seeking to intervene. Thereafter, on November 13, 20, and 27, 1968, the United States belatedly published a notice of condemnation citing "all unknown owners."

lowing intervention in this appeal."
303 F.2d at 779 (Emphasis added.)

Even the United States itself does not
have the right to participate in a case
after "standing by" and doing nothing
until the litigation is concluded. See, e
g., Consolidated Gas E. L. & P. Co. of
Baltimore v. Pennsylvania W. & P. Co.,
194 F.2d 89 (4th Cir. 1952), cert. de-
nied, 343 U.S. 963, 72 S.Ct. 1056, 96 L.
Ed. 1360 (1952); Chemical Bank N.Y.
Trust Co. v. Steamship Westhampton,
268 F.Supp. 169 (D.Md., 1967). In the
Consolidated Gas case, *supra,* the Feder-
al Power Commission applied to inter-
vene in an appeal from a declaratory
judgment holding invalid an electric
power contract between three public
utility companies. During the litiga-
tion, the Federal Power Commission had
had knowledge of the proceeding and its
attorneys even were present during the
trial of the case, yet it took no steps to
intervene until a short time before argu-
ment was made on appeal in the appel-
late court.

The Fourth Circuit rejected the appli-
cation of the FPC as follows:

"There was no attempt in the Dis-
trict Court to comply with Rule 24 of
the Federal Rules of Civil Procedure,
28 U.S.C.A., *which require that an ap-
plication for intervention shall be
timely* and shall be accompanied by a
pleading setting forth the intervenor's
claim or defense. The Commission's
petition to intervene is therefore de-
nied * * *." 194 F.2d at 91
(Emphasis added.)

And, contemporaneous with *McKenna,*
the Eighth Circuit, in Janousek, et al v.
Wells, et al, 303 F.2d 118, at page 122
(8th Cir. 1962), denied a motion to inter-
vene by a party who knew of the action
since its inception, stating:

"The legal principles applying to in-
tervention in federal actions are set-
tled and were thoroughly and ade-
quately reviewed in Kozak, [Kozak v.
Wells, 8 Cir.] supra, 278 F.2d 104.
As we there pointed out, the applica-
tion must be timely. Beyond perad-

venture of a doubt the instant applica-
tion for intervention does not meet
this test and for that reason alone the
court was justified in denying the
same."

In Alleghany Corporation v. Kirby,
344 F.2d 571 (2d Cir. 1965), cert. dis-
missed, 384 U.S. 28, 86 S.Ct. 1250, 16 L.
Ed.2d 335 (1966), certain shareholders
of Alleghany Corporation petitioned the
district court for permission to inter-
vene for the purpose of petitioning deriv-
atively, on behalf of the corporation, for
a writ of certiorari from the Supreme
Court to review a judgment affirmed by
the court of appeals. The Alleghany
Board of Directors determined and voted
not to authorize a petition for a writ of
certiorari. Several days after learning
of this decision of the Alleghany Board,
the shareholders filed their motion. The
Court denied intervention, noting that
the applicants had watched closely the
course of the litigation from the outset
"but sought to intervene only on the eve
of the deadline for filing a certiorari pe-
tition." 344 F.2d at 573.

■ The cases relied upon by Balli,
et al., and the Government are inappo-
site. Taken together, they merely estab-
lish the proposition that a federal dis-
trict court may not decline to exercise
its jurisdiction to determine the true
owners of condemned land when such ju-
risdiction is timely invoked. No author-
ity is cited which would require the dis-
trict court to allow intervention by one
claiming an interest in condemned prop-
erty who, with actual notice of the pro-
ceeding, failed to submit his claim for
adjudication until long after a final
judgment had been entered on the issues
of value and ownership of the property,
and directing that payment be made
therefor.

■ Furthermore, since the Balli
heirs were not made parties to this ac-
tion, their claims to compensation are
not necessarily foreclosed. Nor is the
title of the United States to the property
in any way jeopardized by the existence
of such claims, having been fully estab-

lished by the exercise of the power of eminent domain. Rather, Balli, et al., merely have a claim against the United States for the value of their interest taken, to the extent such interest be a valid one, and subject to whatever other defenses the Government might raise in any action brought by the Balli heirs.

The district court was clearly and properly within the bounds of judicial discretion in ruling that the claim of Balli, et al., came too late, after the case had been tried and judgments entered.[3]

The district court is affirmed.

3. *See* Rambo v. United States, 117 F.2d 792, 793–794 (5th Cir. 1941), where this court upheld the district court's refusal to permit intervention in a condemnation suit by individuals who sought to relitigate the question of the value of the condemned land, judgment as to which had already been entered by the trial court. In this connection, we stated:

"In seeking to intervene the appellants do not allege or contend that they did not have knowledge of the condemnation proceedings when the government brought suit to condemn the land * * * and when it was seeking out the owners of the property. * * * [I]t appears that they sat by during the trial and waited until two appeals had been taken and judgment had been entered, and the award paid into court before they sought to assert their alleged rights."

It is true that in *Rambo* the court indicated that appellants, if their claim were valid, could come in and share in the condemnation award, the funds for which were then in the registry of the court. However, this dictum was clearly premised upon two factors not present in the instant case: (1) the entitlement to the funds had not yet been established as to specific parties, and (2) the assumption that the interests of the appellants in the valuation proceedings had been fully represented by the named parties. Then making the contrary assumption, that the *Rambo* appellants had not been represented in the suit, the court held: "they have not been deprived of any rights they possess for the judgment in the condemnation case would not be binding as to them." On this latter basis, the denial of intervention was affirmed.