# THE RIO GRANDE.

1. In a proceeding *in rem*, a valid seizure and actual control of the *res* by the marshal gives jurisdiction, and an improper removal of it from his custody, as by an order of court improvidently made, does not destroy the jurisdiction. Hence, where, on a libel *in rem* in the admiralty for repairs, a vessel had been seized, and, on hearing, the libel was dismissed, but on the same day an appeal to the Circuit Court was moved and allowed, a motion made on the next day by the claimants, and improvidently granted, to restore the vessel to them, does not divest the Circuit Court of its jurisdiction to hear the appeal, if within due time the appeal is perfected by giving bonds in the way prescribed by statute.

2. In such a case as that above described, a decree by the Circuit Court that the vessel was a foreign vessel—an issue whether it was so or not having been raised in the pleadings—if pleaded or put in evidence in the District and Circuit Courts of another circuit, to which the case finally gets on a new libel *in rem* by the original libellants against the vessel, which, on a subtraction of it from the first district and circuit, they have pursued into a new district and circuit, and seized anew, is conclusive of the foreign character of the vessel.

APPEAL from the Circuit Court for Louisiana; the case being thus:

In October, 1866, one Williams, a steamboat captain, purchased in New Orleans, a steamboat called the Rio Grande, and took her to Mobile, Alabama. He there mortgaged her to Stewart and Ross; and employed her in running between certain towns at the upper and lower parts of Mobile Bay; he, Williams, and not the mortgagees having possession. While she was thus employed, Otis and others, in November, 1867, libelled her in the District Court for Alabama for repairs. The libels alleged that the steamer was owned by persons out of the State of Alabama, and belonged to some port in the republic of Mexico, and that the repairs had been made on the credit of the vessel.

Williams as owner, and Ross and Stewart as mortgagees, intervened, denying that the repairs had been made on the credit of the vessel. They asserted, contrariwise, that the repairs had been made on the credit of Williams. They denied also that the vessel was a foreign vessel, or had been at any foreign port after her arrival at Mobile; asserting, contrariwise, that she was a domestic vessel engaged in running in the internal waters of the State of Alabama.

In point of fact, the evidence tended to show that the vessel had been originally a vessel of war (then named the Susanna), built for the rebel confederacy; that she had been captured during the rebellion by a vessel of the government, sent into Philadelphia and there condemned, and sold as prize to one Hazard, an American citizen, on the 13th of January, 1865; that Hazard sent her to Matamoras in Mexico, under the command of one Tyler, and had given him power to make sale of her; that for commercial purposes she was put under British colors, with a temporary British registry, which expired while she was at Matamoras; that while there she could leave the port in no other way than by obtaining a temporary Mexican registry, which was done by putting her in the name of Francisco Alcala, a citizen of Mexico, residing in New Orleans, under which Tyler brought her to New Orleans; that all this was done for spe-

cial purposes, but that the vessel all the while was in reality the property of an American citizen; that after Williams brought the vessel to Mobile he was not allowed to register her there as his own vessel, she being held under a Mexican registry; and, finally, that the collector gave her a temporary permit and license, on the 12th day of June, 1867, to run in Mobile Bay and River, and referred to Washington for settlement the question whether she should be enrolled.

The court referred it to a master to determine whether there had been a credit to the vessel, and if so whether the vessel was a foreign one.

The master recapitulated leading facts as he conceived them on both sides, bearing on the national character in law of the vessel, some of which are above given—adding that several of the witnesses swore that Captain Williams had told them repeatedly that the vessel was bound for their wages; that she was a foreign vessel, having Mexican owners; but that Williams himself swore that he never told the libellants that they had a lien, and never represented the vessel as being in point of fact owned by any one but himself; though he had spoken of her Mexican registry.

The District Court for Alabama, on the whole case, was in favor of the claimants, that is to say, it considered that the debts set forth in the libels did not constitute a maritime lien so as to give the court jurisdiction, and dismissed the libel. This was on the 11th of May, 1868.

At the time that this decree of dismissal was rendered, and within a few minutes thereafter, a motion was made to the judge holding the court, that an appeal from the decree be allowed. The motion was granted, and an order was then and there made fixing the amount of the bonds to be given on the appeal.

On the next day—that is to say, on the 12th of May—the vessel being still in the custody of the marshal, owing to the fact of some clerical irregularity about the motion for the appeal, the proctor of Stewart and Ross asked for and obtained from the court an order of retention of the vessel to them, and the marshal having surrendered her to

them accordingly they immediately carried her out to sea, and went off with her.   The libellants, nevertheless, on the 14th and 15th of the month gave their appeal bonds in form, and they were duly accepted by the clerk.

On the case being heard by the Circuit Court, that court reversed the decree of the District Court and decreed for the libellants; holding thus both that the credit had been given to the vessel, and that the vessel was to be regarded as a foreign one.   But the vessel was no longer in the marshal's possession to answer.   The *res* had departed.

However, she was soon heard of at New Orleans, and the libellants instantly sent, and, libelling her there, seized and held her anew.   To their libel they appended the record of the proceedings in the District of Alabama.

The Ocean Towboat Company now intervened—a company which, in September, 1869, had acquired the right of the old owner, Captain Williams, and of his mortgagees, Stewart and Ross; the right of whom had passed in some way to a Mrs. Price.

This company set up in answer to the new libel,

1st. That, at the time the libellants took their alleged appeals from the decree of the District Court for Alabama dismissing their libels, as also at the time the Circuit Court for the State just named rendered the decree now invoked, the steamer Rio Grande, proceeded against *in rem*, was neither in the actual nor in the constructive possession of either the District or the Circuit Court; but that, on the contrary, the vessel had prior thereto been restored to the claimants, Ross and Stewart, by virtue of the decree of the District Court.

2d.  That from the circumstances of the case, the claimants could have nothing to urge against the libels in the said District Court of Alabama, their ownership of the Rio Grande having accrued long after the proceedings in that court had terminated, to wit, in September, 1869, and outside of the jurisdiction of the said court, to wit, in New Orleans.

3d.  That all the proceedings had in said Circuit Court for

Alabama, in the matter of the said alleged appeals, were *ex parte*, irregular, and in violation of the rules, usages, and laws of the admiralty, regulating the subject.

That as the libellants had failed to move that court to set aside the decree of restoration heretofore mentioned, or to appeal from the same; and as by reason of their laches in this regard, they had suffered the decree to be carried into effect by the marshal, they must be taken, notwithstanding their form and show of an appeal, as having acquiesced in the execution of the judgment of the District Court dismissing their libels for want of jurisdiction.

4th. That the vessel was a domestic vessel, and, therefore, not liable to a lien for repairs done to her in her home-port, whether credit was given to her or not.

The District Court dismissed the libel filed there, as the District Court of Alabama had done by the libel filed in it. On appeal, however, the Circuit Court reversed—as the Circuit Court of Alabama had done by the decree of the District Court for that district—the decree of the inferior court, and decreed in favor of the lien. The Ocean Towboat Company appealed.

It may be well here to say that the Judiciary and subsequent acts enact, in regard to appeals in admiralty from the District Court to the Circuit Court, that upon sufficient security and service of notice being given, within a certain time, to prosecute them with effect, the appeal shall be a supersedeas and stay execution. The security and notice, it seemed plain, had been duly given in this case.

*Mr. D. C. Labatt, for the appellants, the Ocean Towboat Company; Mr. P. Phillips, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The appellants insist that at the time the libellants took their appeal from the decree of the District Court of Alabama, the vessel proceeded against *in rem* was not in the actual or constructive possession of the District or Circuit Court, but that she had been previously restored to the

claimants by virtue of an order of the District Court, under which the marshal could justify.

But the appeal which was allowed by that court on the 11th of May, operated as a stay of all proceedings upon or under the judgment of dismissal of the libels made on that same day, and but a few minutes before. The appeal was well allowed, the bonds are in compliance with the order of the court so far as it appears, were accepted by the clerk, and were not objected to by the parties. We cannot agree with the argument of the claimant that under such circumstances the Circuit Court in Alabama had no jurisdiction of the appeal, and that its decree was void.

The appeal stayed all proceedings, and the parties were bound to keep the vessel where it then was, to wit, in the possession of the court. The appeal was taken and allowed before any order of discharge was granted, and the bonds required to make the appeal a stay of proceedings were given within the time required by the statute.

The removal of the vessel pending an appeal to the Circuit Court was illegal, in violation of the express directions of the statute regulating appeals.

We do not understand the law to be that an actual and continuous possession of the *res* is required to sustain the jurisdiction of the court. When the vessel was seized by the order of the court and brought within its control the jurisdiction was complete. A subsequent improper removal cannot defeat such jurisdiction. The present claimants are not *bonâ fide* purchasers, setting up new interests. They are purchasers only of such interest as passed under the claims of Mrs. Price and Mr. Williams. This was the very title set up, litigated, and decided in the Alabama suit. It cannot again be interposed and litigated a second time, as a defence to that decree.

In *Cooper* v. *Reynolds*,* the court say: "Jurisdiction of the *res* is obtained by a seizure under process of the court, whereby it is held to abide such order as the court may

---

* 10 Wallace, 317.

make concerning it. The power to render the decree or judgment which the court may undertake to make in the particular case depends upon the nature and extent of the authority vested in it by law in regard to the subject-matter of the cause."

In the case of *The Brig Ann*,* Chief Justice Marshall says: "In order to constitute and perfect proceedings *in rem* it is necessary that the thing should be actually or constructively within the reach of the court. It is actually within its possession when it is submitted to the process of the court; it is constructively so when by a seizure it is held to ascertain and enforce a right or forfeiture which can alone be decided by a judicial decree *in rem*. . . . Before judicial cognizance can attach upon a forfeiture *in rem* under the statute there must be a seizure, for until seizure it is impossible to ascertain what is the competent forum. And if so, it must be a good subsisting seizure at the time when the libel or information is filed or allowed. If a seizure be completely and explicitly abandoned and the property restored by the voluntary act of the party who has made the seizure, all rights under it are gone. It is not meant to assert that a tortious ouster of possession, a fraudulent rescue or relinquishment of her seizure will divest jurisdiction. The case put is that of a voluntary abandonment and release of the property seized, the legal effect of which must be, we think, to purge away all the prior rights acquired by the seizure."

In *Taylor* v. *Carryl*,† the rule is thus laid down: "In admiralty all parties who have an interest in the subject of the suit, *the res*, may appear, and each may propound independently his interest. The seizure of the *res* and the publication of the monition or invitation to appear is regarded as equivalent to the particular service of process in law and equity. But the *res* is in no other sense than this the representative of the whole world. But it follows that to give jurisdiction *in rem* there must have been a valid seizure and an actual control of the ship by the marshal of the court;

---

* 9 Cranch, 290–1.          † 20 Howard, 599.

and the authorities are to this effect.*   In the present in-
stance the service was typical.   There was no exclusive cus-
tody or control of the bark by the marshal from the 21st
day of January, 1848, to the day of sale, and when the
order of sale was made in the District Court she was in the
actual and legal custody of the sheriff."

We hold the rule to be that a valid seizure and actual
control of the *res* by the marshal gives jurisdiction of the
subject-matter, and that an accidental or fraudulent or im-
proper removal of it from his custody, or a delivery to the
party upon security, does not destroy jurisdiction.†   In the
present case the order for restoration was in direct violation
of the statute regarding appeals, and did not operate to de-
stroy the jurisdiction of the Circuit Court.   That court was
authorized to proceed as if no such order had been made.

It is further insisted by the appellants that the Circuit
Court in Alabama had no authority to render its decree, for
the reason that the subject-matter, to wit, materials and re-
pairs to a vessel in a domestic port, gives no ground of ju-
risdiction.   There are several answers to this suggestion:

1. We do not know that the facts are as alleged in the
objection.   Supplies were furnished and repairs were made,
but whether the vessel was an American or a foreign vessel
we have no means of determining.   The report of the master
makes reference to various matters which would authorize
a determination either way, but the testimony itself is not
given.   Until a short time before the furnishing the mate-
rials the vessel had been a Mexican vessel, and the claimant
had repeatedly stated that she was a foreign vessel, but how
the fact was we have no legal means of determining.

2. Whether the vessel was foreign or domestic was one
of the questions presented to the Circuit Court and passed
upon by it, and conclusively.‡

3. If there was error in the decision on this point it was

---

* Jennings *v.* Carson, 4 Cranch, 2; 2 Ware's Admiralty, 362.

† Jennings *v.* Carson, 4 Cranch, 23.

‡ Hudson *v.* Guestier, 6 Cranch, 284.

error only, and not an excess of jurisdiction. The vessel was in possession of the court when the suit was commenced. It was the duty of the court to decide whether the proceeding should be *in rem* or *in personam,* and until reversed its decree on this question is conclusive.

The judgment and decree of the Circuit Court in Alabama, that the vessel was subject to the lien of the libellants' claim, remaining in full force, was conclusive of the right of such claim when alleged in the District of Louisiana. The judgment of the Circuit Court to that effect was right, and must be

AFFIRMED.