## THE VILLARPEROSA.

### No. M-568.

District Court, E. D. New York.

Jan. 31, 1942.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Hyman H. Goldstein, Asst. U. S. Atty., of Brooklyn, N. Y., J. Frank Staley, Asst. U. S. Atty., of Washington, D. C., and Harold B. Finn, and Sydney J. Kaplan, Sp. Assts. to Atty. Gen., of counsel), for libellant.

Loomis & Williams, of New York City (Homer L. Loomis, of New York City, of counsel), for claimant.

MOSCOWITZ, District Judge.

This is a motion made by the United States of America, the libellant, for an order directing the United States Marshal for this district and the Collector of Customs to comply with a notice of taking issued by the United States Maritime Commission.

The libellant requests that the Court make an order directing the Marshal of this Court be permitted to appoint the Master of the Villarperosa or other person having the custody of the vessel and their successors in such custody, as Special Deputy United States Marshals, and that said vessel in such custody be turned over by him to the United States Maritime Commission for the purposes of the requisition issued by it, and that the Special Deputy Marshal or 'his substitute remain always in possession of the vessel for and in behalf of the United States and that the vessel be returned to the custody of the Marshal of this Court upon being released from said requisition or taking by the United States Maritime Commission.

The notice of requisition of the United States Maritime Commission was made pursuant to the authority of the Act of June 6, 1941, Public Law 101-77th Congress, 46 U.S.C.A. note preceding section 1101.

The following resolution was adopted by the United States Maritime Commission:

"Resolution

"Whereas section 1 of the act of Congress approved June 6, 1941, Public Law 101-77th Congress, provides, in part: '* * * during the existence of the national emergency declared by the President on September 8, 1939, to exist, but not after June 30, 1942, the President is authorized and empowered, through such agency or officer as he shall designate, to purchase, req-

uisition, for any period during such emergency charter or requisition the use of, or take over the title to, or the possession of, for such use or disposition as he shall direct, any foreign merchant vessel which is lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, and which is necessary to the national defense * * *.'

"And Whereas the President, by Executive Order dated June 6, 1941, No. 8771, and by an Amendment thereto, dated September 2, 1941, No. 8881, found that the foreign merchant vessels lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, are necessary to the national defense, and authorized and empowered the United States Maritime Commission to take over, and to use and dispose of, any or all such vessels in the manner provided in said act and said Executive Order as amended;

"And Whereas the immediate acquisition of the following foreign merchant vessel which is lying idle within waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, is necessary to the national defense:

| Vessel | Present Location |
| --- | --- |
| Villarperosa | Brooklyn, New York |

"And Whereas the Commission finds and determines that said vessel was not on September 3, 1939, and continuously thereafter, exclusively owned, used and operated for its exclusive sovereign purposes by any sovereign nation;

"Now Therefore, Be It Resolved that the Commission, by virtue of the authority vested in it by the aforesaid act and said Executive Order, and amendment thereto, does hereby, effective as of October 31, 1941, at 12 o'clock, noon, Eastern Standard Time, take over the possession and use of the aforesaid vessel, including all tackle, apparel, furniture, spare parts, gear and equipment, and all stores and supplies, including fuel, aboard such vessel, subject to the Terms and Conditions of the Taking, Use and Disposition of the vessel, hereinafter referred to, all without prejudice to the rights of the United States under any executive seizure of, or forfeiture proceedings against, said vessel, heretofore or hereafter affected or instituted; and

"Further Resolved that any cargo found aboard said vessel be discharged and stored for account of whom it may concern and that the Commission, if necessary, guarantee payment of storage charges; and

"Further Resolved that the Secretary be, and he hereby is, authorized and directed as promptly as possible, to give notice of the taking of the aforesaid vessel, and to take actual possession thereof on behalf of the Commission, by causing an original counterpart or true copy of the Notice of Taking thereof to be affixed in a conspicuous place in such vessel, and to mail an original counterpart or true copy of such Notice of Taking to (1) the Secretary of the Treasury, (2) the owner or owners of the vessel, and (3) any other person whom the General Counsel shall designate, and to put in the records of the Commission proper affidavits of the giving of such notice: Provided, That the mailing of such notice shall be deemed to be for the purposes of information only and shall not be necessary to the validity of the taking of said vessel; and

"Further Resolved that the General Counsel be, and he hereby is, authorized and directed to prepare and submit to the Commission for approval of the Commission a Statement of the Terms and Conditions of the Taking, Use and Disposition of the Vessel; and

"Further Resolved that the Appraisal Committee be and it hereby is authorized and directed to determine the compensation to be paid the owner or owners of said vessel, in accordance with the provisions of the act approved June 6, 1941, and to submit its recommendations with respect thereto to the Commission; and

"Further Resolved that the proper officers of the Commission be, and they hereby are, authorized and directed to take any and all actions necessary and proper to carry out the action of the Commission as set forth in the preceding resolutions."

Pursuant to this resolution the following requisition was made by the United States Maritime Commission on October 30, 1941:

"Notice of Taking
of SS Villarperosa
(herein called the Vessel)
"To the Owner or Owners of
the Vessel (and all persons
claiming an interest therein)
"Sirs:
"Pursuant to the provisions of the Act approved June 6, 1941, Public Law 101-77th Congress, and by authority of the

President, the United States Maritime Commission has taken over the possession and use of the above named Vessel, including all tackle, apparel, furniture, spare parts, gear and equipment, and all stores and supplies, including fuel, aboard the Vessel, effective on October 31, 1941, at 12 o'clock, noon, Eastern Standard Time, under and subject to the Terms and Conditions of the Taking, Use and Disposition of the Vessel, a copy of which will be promptly furnished.

"As provided in the resolution of the Commission by which such possession and use have been taken, such taking is without prejudice to the rights of the United States under any executive seizure of, or forfeiture proceedings against, said vessel, heretofore or hereafter effected or instituted.

"Compensation for such taking will be determined and made in accordance with the provisions of the aforesaid Act.

"Dated: October 30, 1941

        "United States Maritime Commission

"(SEAL)

        "By W. C. Peet, Jr.

        Secretary".

In this suit the libellant seeks to forfeit the steamship Villarperosa, an Italian vessel, for alleged violation of Section 3 of the Act of June 15, 1917, 50 U.S.C.A. § 193, as amended. The allegation upon which the forfeiture is sought is paragraph 2 of the libel which is as follows: "2. That on or about the thirtieth day of March, 1941, and previously thereto, the owners, agent, master, officer, person in charge, or members of the crew of the said Vessel, S/S Villarperosa, within the territorial waters of the United States, with the knowledge of the owner, master, or other person in charge, or command of the vessel, wilfully did cause or permit the injury and destruction of such vessel, her engines, boilers and machinery, tackle, apparel, furniture and equipment and did knowingly permit said vessel to be used as a place of resort for person or persons conspiring with another or preparing to commit offenses against the United States, contrary to the statute of the United States in such cases made and provided and of the rights and obligations of the United States under the law of nations, and in fraud of the United States, subjecting the vessel, her engines, boilers and machinery, tackle, apparel, furniture and equipment to seizure and forfeiture to the United States."

The libellant in its memorandum states that similar libels for forfeiture are pending against a total of about twenty-five Italian and German vessels, all of which the libellant claims were willfully and unlawfully damaged by their respective officers and crews in pursuance of a plan so as to render the vessels unfit for use. Libellant argues that a year will elapse before the trial and appeal of the actions and that in the meanwhile the United States Maritime Commission requires this and the other vessels for the national defense. The United States Maritime Commission has requisitioned their use under the Act of June 6, 1941, Section 1, and the Executive Orders issued in pursuance thereof.

There are three questions involved, whether in an action for forfeiture of a vessel for violation of Section 3 of the Act of June 15, 1917, 50 U.S.C.A. § 193, the Court may release the vessel to the United States Maritime Commission under the Act of June 6, 1941; the second question that, in the event the Court should release the vessel whether the order should contain a provision that if forfeiture fails the vessel should be restored to the claimant, Societa Commerciale di Navigazione of Genoa, or payment of fair compensation in lieu thereof and also just compensation for libellant's use of the vessel in the meantime; the third question relates to the effect of the Declaration of War on December 11, 1941, between the United States and Italy. The first two questions were resolved in favor of the libellant by this Court in connection with the requisition of the Italian steamship San Leonardo. United States of America v. Vessel S. S. San Leonardo, Her Engines, etc., No. M.567 Adm. Circuit Court Judge Augustus N. Hand rejected the claimant's petition for a writ of prohibition and mandamus directed to this Court relating to the order in the San Leonardo, supra. The order entered by this Court on September 3, 1941 in the Leonardo case provided:

"Ordered that the prayer of the petition be granted and that the Marshal of this Court and the Collector of Customs for this District comply with the said Notice of Taking served upon them by the United States Maritime Commission as required by and for the purposes stated in the Act of June 6, 1941; and it is further

"Ordered that the Marshal of this Court be and he is hereby permitted to appoint the Master or other person having the custody of the said vessel, and their successors

in such custody, as Special Deputy United States Marshals; and that the said vessel in such custody be turned over by him to the United States Maritime Commission for the purposes of said requisition; and that the said Special Deputy Marshal or his substitute remain always in possession of the vessel for and in behalf of the United States Marshal, and that the said vessel be returned to the custody of the Marshal of this Court upon being released from said requisition or taking by the United States Maritime Commission."

The libellant asserts that the claimant's contention has been rejected in the following matters and that the orders entered in those matters are substantially the same as the San Leonardo, supra, and the order sought here:

"1. District Court, Eastern District of New York —Moscowitz, Judge—SS San Leonardo—entered September 3, 1941, to which is attached the order entered by Augustus N. Hand, United States Circuit Judge, November 28, 1941, denying application made by Mr. Loomis for a writ of prohibition and mandamus, seeking a stay of the execution of the order.

"2. District Court, District of New Jersey. Smith, Judge—SS ARSA—entered October 14, 1941.

"3. District Court, District of New Jersey—Smith, Judge—SS AUSSA—entered October 14, 1941.

"4. District Court, Eastern District of Pennsylvania—Ganey, Judge—SS Santa Rosa—entered October 21, 1941.

"5. District Court, Eastern District of Pennsylvania—Ganey, Judge—SS Belvedere—entered November 3, 1941.

"6. District Court, Eastern District of Pennsylvania—Ganey, Judge—SS Mar Glauco—entered December 1, 1941.

"7. District Court, Eastern District of Virginia—Pollard, Judge—SS Clara—entered August 13, 1941.

"8. District Court, Eastern District of Virginia—Pollard, Judge—SS Guidonia—entered August 29, 1941.

"9. District Court, Eastern District of Virginia—Pollard, Judge—SS Laconia—entered August 29, 1941.

"10. District Court, Eastern District of Virginia—Pollard, Judge—SS Giuan—entered August 29, 1941.

"11. District Court, Eastern District of Virginia—Way, Judge—entered September 26, 1941—SS Vittorin.

"12. District Court, Eastern District of Virginia—Way, Judge—SS San Guiseppe—entered September 26, 1941.

"13. District Court, Eastern District of Alabama—McDuffy, Judge—SS Ida Z. O.—entered August 19, 1941.

"14. District Court, Eastern District of Louisiana, Borah, Judge—SS Ada O.—entered November 13, 1941.

"15. District Court, Eastern District of Louisiana—Borah, Judge—SS Monfiore—entered November 14, 1941.

"16. District Court, Southern District of Texas—Allred, Judge—SS Mongioia—entered August 21, 1941.

"17. District Court, District of Puerto Rico—Todd, Jr., Acting Judge—SS Colorado—entered November 7, 1941.

"18. District Court for the Canal Zone—Gardner, Judge—SS Conte Biancamano—entered November 20, 1941.

"19. District Court, District of Oregon—Fee, Judge—SS Leme—entered September 11, 1941.

The reply memorandum submitted by the libellant states the following: "There was one order entered by Judge Chestnut in the District of Maryland in two cases, in conformity with a written opinion filed in those cases by him. [The Pietro Campanella, D. C., 41 F.Supp. 656.] The order was entered October 22, 1941, for the SS Pietro Campanella and the SS Euro."

Libellant seeks to requisition the vessel under Section 1 of the Act of June 6, 1941 which provides: "for the purposes of national defense * * * the President is authorized and empowered, through such agency or officer as he shall designate, to purchase, requisition, for any period during such emergency charter or requisition the use of, or take over the title to, or the possession of, for such use or disposition as he shall direct, any foreign merchant vessel which is lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, and which is necessary to the national defense * * *."

Pursuant to this Act the President on June 6, 1941 issued Executive Order No. 8771 which provides:

"And Whereas I find that the foreign merchant vessels now lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone, are necessary to the national defense:

"Now, Therefore, by virtue of the authority vested in me by the aforesaid act, it is hereby ordered as follows:

"1. The United States Maritime Commission (hereinafter called the 'Commission') is hereby authorized and empowered, at such time or times and upon such terms and conditions as the Commission shall deem desirable and conducive to the national defense, to purchase, requisition, charter, requisition the use of, or take over the title to, or the possession of, any or all foreign merchant vessels which are lying idle in waters within the jurisdiction of the United States, including the Philippine Islands and the Canal Zone * * * for the use and disposition hereinafter directed."

Subsequently to the institution of this action the United States Maritime Commission requisitioned this vessel. The purpose of the requisition of this vessel by the United States Maritime Commission is for national defense.

The granting of this motion cannot prejudice the claimant. Its rights will be fully protected and preserved. Under the order the vessel will remain in the custody of the Marshal during the pendency of the forfeiture proceeding.

There is no conflict between the Act of June 6, 1941 and Section 3 of the Act of June 15, 1917. They can be and should be construed together so as to carry out the intent of the Congress.

Section 1605 of Title 19 U.S.C.A. states that all vessels, etc., shall remain in the custody of the collector for the district in which the seizure was made to await disposition according to law unless "otherwise provided by law". Congress in enacting the Act of June 6, 1941 has "otherwise provided by law". This Act authorizes the President to requisition the vessel and applies to any foreign merchant vessel whether it be subject to litigation or not.

There is no relinquishment of jurisdiction of the vessel by the granting of the libellant's order. This Court's jurisdiction of the vessel remains even though it has not the possession of the vessel. The Supreme Court in Ex parte Whitney Steamship Corporation, 249 U.S. 115, 39 S.Ct. 192, 193, 63 L.Ed. 507, decided this question—"The requisition of the Shipping Board extended merely to the use of the ship for war purposes, and did not in fact take her out of the custody of the court". See, also, The Kaiser Wilhelm II, 3 Cir., 246 F. 786, L.R.A.1918C, 795. The Court would not lose jurisdiction of the vessel even though possession is lost without the consent of the Court. See The Rio Grande, 90 U.S. 458, 23 Wall. 458, 23 L.Ed. 158; United States v. The Little Charles, 26 Fed. Cas. No. 15,612, p. 979.

The requisition of the vessel under the Act of June 6, 1941 should not be regarded as an abandonment of the forfeiture proceeding. The forfeiture proceeding deals with the ownership and title whereas the requisition issued by the United States Maritime Commission deals only with the possession and use. The claimant's rights will be fully protected. It may receive compensation if it is justly entitled thereto under the Act of June 6, 1941. All the Court is required to decide in this forfeiture action is to determine the rights of the United States, the claimant and any other persons having or claiming any interest in the vessel. The question of compensation is not to be determined by the Admiralty Court but as provided by the Act of June 6, 1941. See United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L. Ed. 313; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

In view of the Declaration on December 11, 1941 that the United States is at war with Italy, the claimant which is an enemy alien is not entitled to the payment of any compensation. An enemy alien may defend against a suit for forfeiture but may not sue either directly or indirectly for compensation. An enemy alien has no standing to assert rights for compensation. During the war it cannot claim compensation for the use of the vessel. Ex parte Don Ascanio Colonna, 62 S.Ct. 373, 86 L. Ed. ——, decided by the Supreme Court on January 5, 1942. This Court has not the power therefor to fix and determine the amount of compensation or review the amount of compensation, if any, payable by the United States Maritime Commission for the possession and use of the vessel.