UNITED STATES of America, Appellee,

v.

ONE MILLION THREE HUNDRED TWENTY-TWO THOUSAND TWO HUNDRED FORTY-TWO DOLLARS AND FIFTY-EIGHT CENTS ($1,322,242.58), etc.,

Road Atlanta, Inc. & Reginald Donald Whittington (Intervenors),

Reginald D. Whittington, Appellant.

Nos. 90-3368, 90-3406.

United States Court of Appeals, Third Circuit.

Argued March 1, 1991.

Decided July 12, 1991.

---

Kent A. Jordan (argued), Office of U.S. Atty., Wilmington, Del., for appellee.

Paul R. Regensdorf (argued), Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for appellant.

Before STAPLETON and ALITO, Circuit Judges, and CAHN, District Judge *.

OPINION OF THE COURT

ALITO, Circuit Judge:

Two claimants in this forfeiture action brought by the United States under 21 U.S.C. § 881 contest the dismissal of their claims for failure to comply with discovery orders. We will affirm.

* Hon. Edward J. Cahn, Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## I.

In November 1988, the United States obtained a warrant to seize more than $1.3 million dollars held in the name of Reginald Donald Whittington in the Bank of Delaware, in Wilmington, Delaware. In support of the warrant application, the United States submitted an affidavit by an agent of the Drug Enforcement Administration. In this affidavit, the DEA agent asserted that he had been informed by an agent in Fort Lauderdale, Florida, that Reginald Whittington and his brother, William Whittington, had been involved for several years in a major drug smuggling and distribution operation and that both brothers had pled guilty to federal criminal charges relating to this operation in the Southern District of Florida in 1986. During the guilty plea proceeding in that case, the affidavit stated, the prosecution alleged and the Whittingtons acknowledged that William Whittington had been responsible for arranging the smuggling and distribution of drugs and that Reginald Whittington had laundered and invested the proceeds. The affidavit stated that William Whittington had been sentenced to 15 years' imprisonment and had agreed to forfeit $7 million. According to the affidavit, Reginald Whittington had been sentenced to 18 months' imprisonment. While Reginald Whittington was still in prison, the affidavit stated, the agent in Florida received a telephone call from an anonymous individual who appeared familiar with the Whittingtons and their operation and who said that the Whittingtons had hidden $3 million in gold and that Reginald Whittington was going to retrieve and dispose of this gold after his release from prison in March 1988. The affidavit further stated that in November 1988 Reginald Whittington deposited 100 kilograms of gold with the precious metals depository at the Bank of Delaware and that the bank sold the gold at Whittington's request for $1,322,-212.04.

After the seizure warrant was issued and executed, the Bank of Delaware gave the United States Marshal a check for $1,322,-242.58, and the Marshal deposited this check in the Justice Department's Seized Asset Deposit Fund, an account with the United States Treasury. A few days after the seizure, Reginald Whittington filed a document with the United States District Court for the District of Delaware that was entitled "CLAIM" and that asserted that Reginald Whittington was "the lawful owner of the defendant property."

The United States subsequently filed a complaint for forfeiture *in rem.* The complaint alleged that from 1977 to 1982 Reginald and William Whittington imported tons of marijuana into the United States and realized millions of dollars in profits. Since 1977, the complaint alleged, Reginald Whittington's primary source of income had been "derived directly and indirectly from the importation and sale of controlled substances." In 1985, the complaint stated, "Reginald Whittington purchased 189 kilograms of gold at the Bank of Delaware, using profits made from the importation of drugs." In November 1988, according to the complaint, Reginald Whittington brought back and deposited 100 kilograms of gold with the Bank of Delaware.

Several months after the forfeiture complaint was filed, Road Atlanta, Inc., a small Georgia corporation 94% of the stock of which is owned by Reginald Whittington, filed a claim asserting that it was the "lawful owner" of the seized cash. At the same time, Reginald Whittington and Road Atlanta, Inc. filed joint motions to intervene in the forfeiture proceeding and to dismiss the forfeiture proceeding on the ground that it violated the Whittingtons' plea agreements [1] in the criminal prosecution in the Southern District of Florida. In the event that the motion to dismiss was denied, Reginald Whittington and Road Atlanta sought a transfer of the forfeiture

---

1. The claimants submitted the text of three agreements: an initial, eight-page agreement dated March 14, 1986; a second, 20–page agreement dated December 31, 1986; and a third, 13–page agreement dated September 27, 1987.

All of these agreements were signed by the Whittingtons, their attorneys, and attorneys with the United States Attorney's office in the Southern District of Florida.

proceeding to the Southern District of Florida. The motion to intervene was granted with the government's consent but, after briefing and argument, the remaining motions were denied in July 1989.

On August 25, 1989, the United States served interrogatories upon Reginald Whittington and served requests for production of documents upon both claimants. No responses were provided by either claimant within 30 days (*i.e.,* by September 25) as required by Fed.R.Civ.P. 33(a) and 34(b). Counsel for the claimants first promised to provide responses by October 6, 1989. When that deadline was not met, counsel for the claimants promised to provide responses within one week and stated that he did not "anticipate that the entire week [would] be required." This commitment was also broken.

On November 7, 1989, the government attorney wrote to counsel for the claimants requesting that he call at his "earliest convenience so that [they could] avoid litigating a motion to compel discovery." This letter apparently elicited no response.

On December 29, 1989, the government attorney sent a letter to the claimants' local counsel, with a copy to their Florida counsel, stating that a motion to compel discovery would be filed unless full discovery responses were delivered by January 4, 1990. When no responses were received, the government moved for an order compelling the claimants to respond to the discovery requests. The claimants submitted no response to this motion, and on January 29, 1990, the district court entered an order requiring them to furnish complete responses to all the discovery requests within 10 days. Pursuant to Fed.R.Civ.P. 37(a)(4), the court's order also directed the claimants to pay for the government's expenses in bringing the motion to compel. Although the claimants paid this sanction (a sum stipulated to be $425.00), the claimants provided no responses to the outstanding discovery requests. Accordingly, on February 26, 1990, the government moved for dismissal of their claims under Fed.R.Civ.P. 37(b)(2)(C). The claimants did not respond to this motion, and on March 5, 1990, the district court entered an order dismissing their claims and declaring that the defendant property was forfeited to the United States.

On March 15, 1990, Road Atlanta, Inc. (but not Reginald Whittington) moved for reconsideration or relief from the court's order pursuant to Fed.R.Civ.P. 59 and 60. This motion provided little explanation for the claimants' failure to comply with the government's discovery requests or the court's order compelling discovery. Aside from vague suggestions that some efforts to locate requested documents had been made, the only explanation provided was the following comment: "[I]t should be pointed out that the original criminal action which was brought in the Southern District of Florida created issues with respect to the ability to respond and the appropriateness of response to the United States Government, vis-a-vis documents relative to the earlier pending criminal case." The motion also stated that some corporate records had been furnished to the government subsequent to dismissal of the claims and that attempts were being made to locate other corporate records on public file in Georgia. The government opposed Road Atlanta's motion, asserting that Road Atlanta still had not responded to eight of the government's ten requests for production of documents. The government's response also represented that counsel for Road Atlanta had stated that Reginald Whittington would not respond to any discovery requests but would assert his Fifth Amendment privilege against compelled self-incrimination. After the forfeiture order was entered, the money was transferred from the Justice Department's Seized Asset Deposit Fund to another Treasury account, the Justice Department's Asset Forfeiture Fund.

On April 3, 1990, the district court wrote to Road Atlanta's counsel stating that its motion would be denied unless within two weeks counsel "present[ed] to the court positive proof that Road Atlanta will provide meaningful responses to the United States' legitimate discovery requests, as opposed to Mr. Whittington's merely asserting blanket fifth amendment rights."

Precisely two weeks later, counsel for Road Atlanta responded to the court's letter. Counsel asserted that many financial records had already been furnished and that two individuals, a representative of the corporation's accounting firm and an individual who "functioned essentially as Road Atlanta's manager during the pendency of the criminal proceeding in Fort Lauderdale," would be available to testify regarding those records. Counsel confirmed, however, that "Reginald D. Whittington has and will continue to invoke his Fifth Amendment privilege."

After receiving this response, the district court denied Road Atlanta's motion. The court noted that "counsel for Road Atlanta has represented to this Court that Reginald Donald Whittington will not present testimony [relating to the source of the defendant money], but instead, Whittington will invoke his Fifth Amendment rights in response to any question as to the source of the funds." The order stated that "in the absence of testimony from Whittington, the United States has not received, and will not receive, meaningful testimony and/or discovery as to the source of the funds." Both Road Atlanta and Reginald Whittington filed timely notices of appeal.

## II.

Before discussing the merits of this appeal, we must consider the government's argument that we lack jurisdiction due to the "removal of the *res* from the district court's jurisdiction." Government brief at 13. The government contends that a long established principle of *in rem* jurisdiction requires that the *res* remain within the jurisdiction of the trial court until the end of the appellate process and that the removal of the *res,* unless accidental, fraudulent or improper, destroys jurisdiction. *See The Rio Grande,* 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1874); *United States v. $29,959.00 United States Currency,* 931 F.2d 549 (9th Cir.1991). The government further argues that Congress incorporated this principle when it enacted 21 U.S.C. § 881, the forfeiture statute under which the present proceeding was maintained. In

recent years, several courts of appeals have accepted this argument. *United States v. $84,740.00 United States Currency,* 900 F.2d 1402 (9th Cir.1990) (forfeiture brought pursuant to 21 U.S.C. § 881(a)(6)); *United States v. Tit's Cocktail Lounge,* 873 F.2d 141 (7th Cir.1989) (same); *United States v. One Lear Jet Aircraft,* 836 F.2d 1571 (11th Cir.) (en banc), *cert. denied,* 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988) (forfeiture proceeding pursuant to 8 U.S.C. § 1324(b)); *United States v. $79,000.00 United States Currency,* 801 F.2d 738 (5th Cir.1986). Others have rejected the argument. *United States v. $95,945.18 United States Currency,* 913 F.2d 1106 (4th Cir.1990) (discussing 21 U.S.C. § 881(a)(6)); *United States v. Aiello,* 912 F.2d 4 (2d Cir.1990); *cert. denied,* — U.S. ——, 111 S.Ct. 757, 112 L.Ed.2d 777, (1991) (same); *United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976 (5th Cir.1984) (action brought *in rem* to seize drugs pursuant to section 304 of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*). Because we believe that the government's analysis of *in rem* jurisdiction and 21 U.S.C. § 881, even if correct, is not applicable to the facts of the present case, we hold that we have jurisdiction to entertain this appeal.

The government's position regarding removal of the *res* from the district court's jurisdiction subsumes two separate arguments. The first argument concerns geography, *i.e.,* that jurisdiction is generally lost if the *res* is removed from the district in which the forfeiture proceeding has been brought. The second argument concerns judicial power, *i.e.,* that jurisdiction is lost if the *res* is released from the court's control. *See United States v. Aiello,* 912 F.2d at 5–6. In the present case, we are not persuaded that either argument applies.

■ Turning to the question of geography, we do not think that rules concerning physical location can be applied in any meaningful sense to an incorporeal *res* such as that involved in this case. The *res* at issue here is merely an entry in a Justice Department account with the United States Treasury. In other words, the *res* is an

obligation on the part of the Treasury to disburse the specified sum to the Department of Justice. Deeming this obligation to be located at any particular place within the United States would be a complete fiction. If we are compelled, however, to determine where this obligation is "located," we cannot say that the obligation does not exist in every part of the country, including the District of Delaware. In the present case, the government appears to agree that the *res* remained in the District of Delaware when it was initially seized and deposited in one Treasury account, the Justice Department's Seized Asset Deposit Fund. If this Treasury account is deemed to exist within the District of Delaware, we see no reason why another Treasury account, the Justice Department's Asset Forfeiture Account, should not also be regarded as existing within that District.

■ Even if all Treasury accounts are deemed by some fiction to be located at a place outside the District of Delaware, we still have jurisdiction here. If Treasury accounts are located outside Delaware, the *res* in this case left the District of Delaware when it was deposited into the Seized Asset Deposit Fund *prior to forfeiture*. If this deposit constituted a proper shipment outside the district,[2] the shipment must have been made under 21 U.S.C. § 881(c)(2) or (3)[3]; these provisions, in a departure from traditional *in rem* rules, authorize storage of seized property outside the district of seizure pending completion of the forfeiture proceeding. The government

agrees that a shipment for storage outside the district pursuant to these provisions does not destroy jurisdiction.[4] Presumably the government could argue that jurisdiction was subsequently destroyed because the *res* was not returned to the District of Delaware after forfeiture and pending appeal. But the government has not made this argument, and neither traditional *in rem* rules (which would not have permitted storage outside the district in the first place) nor cases decided under 21 U.S.C. § 881(c)(2) and (3) support this proposition. Consequently, we see no basis for concluding that the geographical location of the *res* in this case deprives us of jurisdiction.

■ With respect to the question of judicial power, the government has not explained why the federal courts lost control of the *res* at issue here when, after forfeiture, this sum was transferred from the Justice Department's Seized Asset Deposit Fund to the Justice Department's Asset Forfeiture Fund. Both funds hold Justice Department monies. Both funds are accounts with the United States Treasury. The government has informed us that the Seized Asset Deposit Fund was created administratively pursuant to 28 U.S.C. § 524(c)(1) to hold seized cash pending forfeiture and that the Asset Forfeiture Fund was created by 28 U.S.C. § 524(c)(1) to hold the proceeds of forfeited property, but the government has not explained why the federal courts have greater legal authority with respect to the former fund than with

---

**2.** If the *res* is improperly removed from the district, the court does not lose jurisdiction under traditional *in rem* case law *See The Rio Grande*, 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874); *United States v. $57,480.05 United States Currency*, 722 F.2d 1457, 1458 (9th Cir.1984).

**3.** 21 U.S.C. § 881(c)(2) and (3) provide that whenever property is seized under any of the provisions of this subchapter, the Attorney General may:
  (2) remove the property to a place designated by him; or
  (3) require that the General Services Administration take custody of the property and remove it, if practicable to an appropriate location for disposition in accordance with law.

**4.** The government contends that Congress enacted 21 U.S.C. § 881(c)(2) and (3) to make clear

that such transfers for storage outside the district do not destroy jurisdiction. The government notes that 21 U.S.C. § 881(d) generally incorporates the laws relating to customs seizures and forfeitures; that one such provision, 19 U.S.C. § 1605, provides that jurisdiction over seized property is not affected by the storage of the property *outside the district pending disposition of the forfeiture complaint;* and that the legislative history shows that Congress felt that this provision was needed in order to create an exception to the general rule that seized property must remain within the district. S.Rep. No. 2326 83rd Cong., 2nd Sess. 3, *reprinted in* 1954 U.S.Code Cong. & Admin.News 3900, 3906. We express no view on the correctness of this argument.

respect to the latter. In the absence of any such explanation, we have no grounds for holding that transfer of the *res* from one fund to the other deprived the federal courts of jurisdiction. We therefore hold that we possess jurisdiction to entertain this appeal, and we will thus turn to the merits.

### III.

In determining whether to dismiss the claims of Reginald Whittington and Road Atlanta, the district court was required to consider the following factors:

> (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternate sanctions;* and (6) the *meritoriousness* of the claim[s].

*Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 868 (3d Cir.1984) (emphasis in original). We must review the district court's decision for abuse of discretion. *Id.* at 870. In doing so, we will address the *Poulis* factors seriatim.

■ 1. *The extent of the party's personal responsibility.* The record in this case clearly shows that Reginald Whittington bears personal responsibility for the claimants' persistent failure to comply with the government's discovery requests and the court's order compelling discovery. The claimants' appellate brief makes clear that Whittington's own record of noncompliance resulted from a decision that he made personally. The claimants' brief (at 22) asserts that Whittington refused to respond to any of the discovery requests based upon a blanket assertion of Fifth Amendment privilege.

We likewise infer that Whittington was personally responsible for Road Atlanta's conduct. As noted above, Whittington was involved in deciding how to respond to his own discovery obligations; Whittington owned 94% of Road Atlanta's stock (his brother William owned the remaining 6%); and Whittington and Road Atlanta have been jointly represented throughout this case by the same attorneys. Accordingly, it is clear that the claimants are personally responsible for the events that led to dismissal of their claims and the denial of Road Atlanta's post-dismissal motions.

Although at this point we are simply discussing the question whether the claimants were personally responsible for the refusal to comply with discovery, we note that Reginald Whittington's belated and blanket assertion of Fifth Amendment privilege did not justify the claimants' conduct during the course of the proceedings in district court. If Whittington wished to assert his Fifth Amendment privilege in response to any of the interrogatories or requests for production of documents served by the government, he was required to assert timely objections in response to individual discovery requests. Fed.R. Civ.P. 33(a), 34(b). Likewise, if Road Atlanta was unable to respond to any of the government's discovery requests due to Whittington's assertion of Fifth Amendment privilege,[5] Road Atlanta was required to submit timely responses asserting its inability to comply on this ground. Fed.R. Civ.P. 34(b). Instead, both claimants simply ignored all discovery requests, ignored the court's order compelling discovery, and apparently never mentioned Whittington's Fifth Amendment privilege in relation to the discovery requests until after the claims had been dismissed. Even then, Whittington asserted a blanket claim of privilege, although it seems very unlikely that he could legitimately claim the privilege with respect to some of the discovery requests that he refused to obey.[6] Thus,

---

5. As a corporation, Road Atlanta, Inc. has no Fifth Amendment privilege and may not refuse to produce corporate documents based upon the personal privilege of a corporate custodian.

*Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

6. Interrogatory No. 9, for example, asked Whittington to supply the names and addresses of

the Fifth Amendment provides no justification for the claimants' conduct in the district court.

2. *Prejudice to the adversary.* The record in this case shows that the government was significantly hampered in the prosecution of its forfeiture proceeding by the claimants' failure to provide discovery or obey the court's order. The proceeding was delayed, and the attorney for the government was required to move to compel discovery. *See Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d at 868. As the district court noted, the claimants' failure to provide discovery impaired the government's ability to establish the source of the seized money. *See* May 9, 1990 Order.

3. *A history of dilatoriness.* As shown by the chronology of the events recounted above, the claimants in this case consistently violated discovery deadlines. They did not provide discovery within the period prescribed by Fed.R.Civ.P. 33(a) and 34(b); they did not comply with the extended deadlines to which government counsel agreed; they did not respond to subsequent entreaties to provide discovery prior to the filing of the motion to compel; they flagrantly disobeyed the court's order compelling discovery; they flatly ignored the motion for dismissal; and even after dismissal, Reginald Whittington failed to provide any discovery whatsoever, and Road Atlanta, Inc. provided only a small portion of the documents that had been requested by the government nearly nine months earlier.

4. *Whether the parties' conduct was willful or in bad faith.* As previously noted, it is apparent that the claimants' refusal to provide discovery in this case resulted in large measure, if not entirely, from a deliberate decision made by Reginald Whittington. Thus, there can be no doubt that the claimants' conduct was willful. Moreover, we believe that the claimants exhibited bad faith by essentially ignoring all discovery requests and the

court's order compelling discovery until after their claims had been dismissed.

5. *Alternative sanctions.* It seems very doubtful that any alternative sanctions would have been successful in the present case. Before dismissing the claims, the district court imposed monetary sanctions, but the claimants simply paid the sum and continued to disobey their court-ordered discovery obligations. In light of this conduct, it is doubtful whether additional monetary sanctions would have been effective. Moreover, since Reginald Whittington failed to provide any discovery and Road Atlanta failed to furnish most of the documents requested by the government, we doubt whether any of the lesser sanctions set out in Fed.R.Civ.P. 37(b)(2)(A) or (C) (designating certain facts to be established, refusing to allow the disobedient party to support or oppose designated claims, prohibiting introduction of designated evidence, striking pleadings, or staying further proceedings) would have been practicable. Nor do we believe that the district court was obligated to tolerate further delay in the disposition of the forfeiture proceeding due to the claimants' failure to comply with their discovery obligations.

6. *Meritoriousness of the claim.* For present purposes, "[a] claim ... will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery ... or would constitute a complete defense." *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d at 869–70. In *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 196 (3d Cir.1984), we considered whether a claimant in a forfeiture proceeding had met this test by alleging in his answer that the seized money " 'was neither furnished nor intended to be furnished by any person in exchange for a controlled substance.' " We held (728 F.2d at 196) that this "conclusionary language" was insufficient to establish a meritorious defense for the purpose of setting aside a default judgment. We noted (*id.*) that the claimant had "fail[ed] to set forth any alle-

anyone with whom he had consulted in preparing his answers to interrogatories. Similarly, Whittington was asked to execute a release requesting various Internal Revenue Service

forms. *See Doe v. United States,* 487 U.S. 201, 215–218, 108 S.Ct. 2341, 2350–2352, 101 L.Ed.2d 184 (1988).

gations containing facts which, if proven at trial, would constitute a meritorious defense to the forfeiture."

Here, the claimants likewise failed to allege any facts that would, if proven at trial, show that the seized money was not traceable to illegal drug transactions. Instead, they relied in the district court and continue to rely on appeal primarily upon the defense that the seizure and the forfeiture proceeding violated portions of Reginald Whittington's plea agreement. Specifically, the claimants maintain that the government violated portions of the agreements providing that information gathered during the criminal investigation in Florida would not be shared with other federal agencies and that no further forfeitures would be sought from Reginald Whittington. Appellants' Brief at 17–19.

Based upon the claimants' motion and the appended plea agreements, these arguments do not appear to be meritorious. Under the first plea agreement, the government promised not to disclose grand jury information except as permitted by Fed.R. Crim.P. 6(e). The claimants assert that the seizure warrant was obtained based on information that was communicated to authorities in the District of Delaware in violation of this provision, but the claimants have not identified any specific facts asserted in the affidavit supporting the warrant that were not readily apparent from public records regarding the Whittingtons' guilty pleas and sentencing in open court. Similarly, the claimants have not identified any provision in any of the agreements that appears on its face to prohibit the present forfeiture proceeding. The first two agreements do not appear to contain any provisions relating to this question, and the final agreement merely states that the parties "agreed that no other property or assets shall be subject to forfeiture under the provisions of the [three agreements], other than those assets included and listed on Exhibits A and B to the [third agreement]". On its face, this provision simply rules out the forfeiture, pursuant to the various plea agreements, of property not listed on the designated exhibits; this provision does not appear to say anything about other forfeiture proceedings. Moreover, the claimants have not identified any portion of the agreement that purports to make this provision binding on any government agency other than the United States Attorney's office for the Southern District of Florida.

In sum, the six factors listed in *Poulis* strongly support the district court's decision to dismiss the claims of Reginald Whittington and Road Atlanta for failure to comply with their discovery obligations. We hold that the district court soundly exercised its discretion, and we will therefore affirm its decision.