**UNITED STATES of America**

v.

**Tommy C. MARSH.**

**Criminal No. 4:93–cr–2WS.**

United States District Court,
Southern District of Mississippi,
Jackson Division.

Aug. 9, 1995.

Office of the United States Attorney, Southern District of Mississippi, Jackson, MS, for Plaintiff/Petitioner.

Douglas Paul Nanney, Pelahatchie, MS, for Defendant/Respondent.

### *ORDER*

WINGATE, District Judge.

This matter is before the court pursuant to the motion of the defendant seeking "relief from judgment of forfeiture" with regard to $13,841.00 in United States currency (hereinafter "the currency"). This currency was seized on June 27, 1992, by drug enforcement agents of the State of Mississippi and later turned over to the Federal Bureau of Investigation (hereinafter "FBI") on May 12, 1993, nearly one month after this court accepted the defendant's plea of guilty on April 19, 1993. The defendant claims that he was deprived of this personal property without due process of law by a judgment of this court directing forfeiture of the currency. However, no judgment of forfeiture has ever been entered by this court with regard to the currency in question or any other property claimed by the defendant. Instead, the defendant and his attorney[1] signed a document entitled "Consent to Administrative Forfeiture and Waiver of Notice of Defenses" (hereinafter "Consent and Waiver") on April 19, 1993, the same day he entered his plea of guilty to federal drug charges, in connection with a Memorandum of Understanding also signed by the defendant and his attorney on April 19, 1993. The Memorandum of Understanding states that "[t]he defendant also understands that it is part of

---

1. At the time this document was signed on April 19, 1993, the defendant was represented by Joe Gewin. This motion, filed February 22, 1995, was brought on the defendant's behalf by Douglas Paul Nanney.

this plea agreement that he must immediately and voluntarily forfeit to the United States" the currency in question,[2] as well as several additional items of personal property. The "Consent and Waiver" refers to the same currency and other personal property. Significantly, the Consent and Waiver clearly states that the defendant "agrees and consents to the administrative forfeiture of the above listed properties (including the currency in question) and *hereby waives any and all notice to which he may be entitled . . .* and *waives any and all defenses* he may have had or still have to the administrative forfeiture. . . ." Notwithstanding this agreement with the United States Attorney to waive notice, all defenses and forfeit the currency in question administratively without requiring the United States to obtain a judgment, the defendant now, almost two years later, moves to reconsider a "judgment" of forfeiture, claiming that the currency in question was not proceeds from illegal drug activity; that the defendant did not receive either of two letters mailed to his last two known addresses by the FBI providing him notice of the forfeiture; that he is illiterate; that he suffers from loss of hearing; and that he was denied the opportunity to contest the matter. Furthermore, at the time the two letters of notice were sent to the defendant's last known addresses by the FBI, the defendant had been incarcerated at least six months prior to the mailing date of those letters. While this court's jurisdiction in matters of forfeiture depends upon its control over the defendant *res,* control this court possibly never obtained, this court still may take jurisdiction over a forfeiture matter where it might be shown that the forfeiture by a federal agency was accidental, fraudulent or improper. *United States v. $79,000.00 in United States Currency,* 801 F.2d 738, 739 (5th Cir.1986), citing *The Rio Grande,* 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1874). If the defendant was entitled to and did not receive notice of forfeiture, then due process may be violated and forfeiture argu-

ably may be improper. Due process requires that the defendant be given adequate notice of the forfeiture proceeding. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Specifically, "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). Therefore, the basis of defendant's motion for "relief from judgment of forfeiture" shall be explored to determine whether any grounds for relief have been stated.

The statute under which the property was seized, 21 U.S.C. § 881(a)(6), provides that "[t]he following shall be subject to forfeiture to the United States and no property right shall exist in them":

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

When the defendant entered his plea of guilty on April 19, 1993, he knew that the currency in question had been seized by state officials in June of 1992. Additionally, the

2. The total amount listed in the Memorandum of Understanding and the "Consent and Waiver" was $14,541.00. On January 10, 1994, the Forfeiture and Seized Property Unit of the Jackson, Mississippi, office of the Federal Bureau of Investigation sent notice to the defendant of its intent to perfect forfeiture on $13,841.00. This is the amount the defendant seeks now to recover.

defendant received personal notice at least by April 19, 1993, of the government's (FBI's) intention to declare the currency forfeit. On advice of counsel, and pursuant to plea negotiations, the defendant agreed to waive notice, all other defenses, and the necessity of conducting judicial forfeiture with regard to this currency.

Pursuant to the defendant's "Consent and Waiver" signed by himself and his attorney, the FBI began administrative rather than judicial forfeiture proceedings by executing a Declaration of Forfeiture on the currency in question on March 23, 1994. Administrative forfeiture begins when a government agency seizes property claiming it is subject to forfeiture. Title 19 U.S.C. § 1607 requires that the government send written notice of any seizure "together with information on the applicable procedures to each party who appears to have an interest in the seized article." Then, the agency publishes notice of the seizure and its intent to forfeit the property. Pursuant to 21 C.F.R. § 1316.77(b), "[f]or property seized by officers of the Federal Bureau of Investigation, if the appraised value does not exceed the jurisdictional limits in § 1316.75(a) (five hundred thousand dollars as provided by 19 U.S.C. § 1607(a)(1)), and a claim and bond are not filed within the 20 days hereinabove mentioned, the FBI Property Management Officer shall declare the property forfeited in accordance with Title 19 U.S.C.S. § 1609 (if no claim is filed or no bond is given within twenty days ... the appropriate customs officer (in the instant case the FBI Property Management Officer) shall declare (the currency) forfeited ...).

This court finds that the FBI followed the proper administrative forfeiture procedures. The FBI's Declaration of Forfeiture states that the currency in question was first seized by the Wayne/Clarke County Metro Task Force on June 27, 1992, and that notice of this action was sent to all known parties who might have had an interest in the currency. Then, the currency was transferred into FBI custody in May of 1993 where it remained until administrative forfeiture proceedings

were initiated in January of 1994. The Declaration of Forfeiture prepared by the Property Management Officer of the FBI indicates the dates that notice of forfeiture was published in the New York Times—January 23, 1994; January 30, 1994; and February 6, 1994. Additionally, the FBI delivered to the defendant by certified mail two letters setting forth information on the applicable procedures for contesting forfeiture on January 10, 1994.[3] Two receipts signed by Ethel Wallace and Bruce Wallace respectively at the addresses listed at footnote 2 were returned on January 12, 1994. Finally, the Declaration of Forfeiture notes that no petition for remission or mitigation of forfeiture was presented and no claim was filed by anyone claiming interest in the currency within 20 days of first publication of notice. So, having received no claim within twenty days from the date of the first publication, the FBI Property Management Officer declared the currency in question forfeit in accordance with Title 19 U.S.C. § 1609.

■ The defendant now claims that due process was violated because he personally did not receive the two letters of notice from the FBI in January of 1994. There is authority—overlooked by the defendant—which supports his argument that an owner of seized property should be served personally with notice of forfeiture. In *United States v. Woodall*, 12 F.3d 791 (8th Cir.1993), the Eighth Circuit held that "[w]hen the government has actual knowledge of an interested party's whereabouts at the time forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards." *Id.* at 794, citing *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). *See Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1160–61 (2nd Cir.1994) (mailing to last known address and last known place of incarceration not sufficient notice where the letters were returned unclaimed).

---

**3.** These two letters were mailed to the two last known addresses of the defendant Tommy C. Marsh—Route 3, Box 71 Quitman, Mississippi 39355; and 306 Beckman Street, Quitman, Mississippi 39355.

This court is unpersuaded that the foregoing authority applies to the facts of the instant case. None of the foregoing cases involved a defendant who, on advice of counsel, had signed a waiver of notice, all defenses, and the necessity of conducting a judicial forfeiture while in the process of plea negotiations. This provides sufficient foundation in itself to conclude that the plaintiff has stated no grounds for relief pursuant to the instant motion for reconsideration. Furthermore, presuming that the FBI in the instant case had actual knowledge of the defendant's whereabouts, the defendant waived his right to "any and all notice." The two letters mailed to the defendant's two last known addresses served the purpose of informing any innocent parties living at those addresses of the FBI forfeiture proceedings regarding the currency. There was no requirement in January of 1994 that these letters inform the defendant of anything.

Finally, at the time his plea was accepted by this court, the defendant said nothing about a hearing problem and exhibited no difficulty communicating with the court even if he was hard of hearing. When asked about his level of literacy, the defendant responded that he had completed the tenth grade in school and that he could read and write "a little bit." When asked about his satisfaction with his counsel's representation, the defendant responded that he had no complaints. This was the same counsel who advised the plaintiff to sign the Consent and Waiver and the Memorandum of Understanding with the United States Attorney. Therefore, this court finds no basis for granting relief from the administrative forfeiture conducted and concluded by the FBI on March 23, 1994. The defendant's motion for "reconsideration of judgment" is hereby denied.